James WAYMIRE, Plaintiff-Respondent,

v.

Minnie Marie CARTER, Defendant-Appellant.

No. 31031.

St. Louis Court of Appeals.

Missouri.

March 19, 1963.

H. L. C. Weier, Dearing, Richeson & Weier, Hillsboro, for appellant.

Jeremiah Nixon, Thurman, Nixon & Smith, Hillsboro, for respondent.

BRADY, Commissioner.

In this negligence action for personal injuries which resulted in a jury verdict in the amount of $15,000.00 for plaintiff, there is little dispute as to the facts. Due to this fact, the appellant's allegations of error, and the decision reached herein, it will be unnecessary to burden this opinion with a minute recitation of the factual situation. The parties will hereinafter be referred to by their designation in the trial court.

The plaintiff was driving westwardly on a public street in Herculaneum, Missouri, when he observed the defendant coming toward him. At that time, the defendant's automobile was in the center of the road which was approximately 3½ car widths wide. The plaintiff pulled over to the right-hand edge of the street, stopped as close as he could to the cars already parked

there and blew his horn; defendant's automobile, continuing at an undiminished speed, proceeded toward plaintiff's truck until defendant was entirely on the plaintiff's side of the road and hit the plaintiff. The defendant's testimony was that she was headed eastwardly and that the morning sun, combined with the dew on her windshield, blinded her. The State Highway Trooper called to the scene testified that plaintiff's truck was completely on his side of the road facing westwardly and, having answered that question, the following questions were asked and answers given:

"Q. Was the Plymouth completely on the wrong side?

"A. The Plymouth was on the same side of the road as the dodge truck, except it was facing east.

"Q. It was headed east?

"A. That's right.

"Q. Would it be fair to say the the Plymouth was in the wrong lant?, (sic)

"Mr. Weier: Object to that, if the Court please, that calls for a conclusion, on the part of the trooper.

"Q. What is the proper lane for the eastbound traffic?

"Mr. Weier: I object to that too, for the same reason, it's calling for an opinion here on the part of the trooper and it isn't proper.

"The Court: I think he can testify to which lane the traffic should have been traveling.

"Mr. Weier: He's already described the lane which he found the car in, if the Court please.

"The Court: Yes, but I think he can testify to what lane it should be in.

"Q. Alright, now what lane was the proper lane for the eastbound 58 Plymouth?

"A. As far to the right as possible, there's no dividing line on this street."

With regard to his injuries, the disposition of this appeal made herein requires only a slight restatement of that evidence. The plaintiff testified that he was thrown forward against the steering wheel which, in turn, threw him back against the seat and he felt a sharp pain in his lower back from his belt down " * * * just like a knife or something had stuck in there." From August 21, 1959, until January 14, 1960, the plaintiff was treated by Dr. E. J. Senn. He made approximately 66 visits to Dr. Senn who prescribed medicine for "nerve pull" which the plaintiff took one or two a day as an average. A hard bed was also prescribed and the plaintiff lay on a hot pad " * * * just as hot as I could bear." The first treatment or two at Dr. Senn's office was a heat treatment and after that, ultrasonic sound treatments. A back brace and a knee brace were also prescribed and worn. It was this physician's opinion that plaintiff was not responding as he should to treatment and he sent plaintiff to Dr. Lottes, an orthopedic surgeon in St. Louis. It is unnecessary to burden this opinion with a full recital of this witness' testimony as we do not reach the allegation of excessiveness raised by defendant. Dr. Lottes' diagnosis was that "He has a severe low back sprain with sciatic irritation." His opinion was that " * * * he will have some permanent disability" and that the collision caused the plaintiff " * * * present complaints, pain and disability."

The plaintiff returned to work on October 5, 1959, and testified that he was in pain and unable to bend, stoop or walk freely. Three merchants to whom he delivered bakery products also testified that the plaintiff limped badly and had difficulty getting on and off the truck, and was restricted in his movements. The plaintiff's employer testified that the plaintiff " * * * limps and leans forward to his right" and that he doesn't get back in off of his route until 5:30 or 6:00 when he used to get in

at 1:00 or 1:30 although he does do the same work.

To rebut this evidence, the defendant introduced motion pictures taken of plaintiff while on his delivery route. These pictures were taken by James Jordan and Carl VanLaaten. Upon cross-examination of Jordan, the following questions were asked and answers given with the objections and comments made as shown:

"Q. Who are you employed by?

"A. The Allen Commercial Service.

"Q. And what is the Allen Commercial Service?

"A. Well, this is the insurance division of the Pinkerton National detective Agency.

"Q. What does the insurance division of the Pinkerton National Agency do?

"A. Well it deals directly with any type of insurance case, I mean for example, investigations, surveillances.

"Q. Is that this type of case, is this a insurance case?

"Mr. Weier: If the Court please, I want to object to any interrogation along this line. It's an attempt to create prejudice in the minds of the jury. I want to move at this time that the jury be discharged on account of the attempt here, the evident attempt here on the part of the attorney for the plaintiff to interject a false issue in this case.

"The Court: The motion to discharge the jury will be denied. The objection otherwise is sustained.

"Mr. Weier: I move that the jury be instructed to disregard any of these statements, the testimony that has been given her by this witness, in connection with these last 3 questions.

"The Court: That would be too hot now, I'm not right sure of what you're moving to.

"Mr. Weier: I withdraw the motion.

"Mr. Nixon: Your Honor, I don't want to go against the Court's ruling, is the Court ruling, that I can not interrogate anymore about who employes him?

"The Court: That's right.

"Mr. Nixon: May I interrogate as to who employes his employer?

"The Court: Who employed his employer?

"Mr. Nixon: Yes, he works for this * * *

"The Court: Well, if he knows.

"Q. Do you know who employed your employer for you to do this work?

"A. I do now, but I didn't at the time.

"Q. You do now?

"A. Only through Mr. Weier I do.

"Q. You never knew it before?

"A. No sir.

"Q. How much was charged for making these pictures?

"A. I have no idea.

"Q. Did you submit a charge sheet to your company?

"A. Well, I work directly for my company on an hourly basis, it isn't a case of job by job basis.

"Q. As far as you're concerned?

"A. Right."

Defendant's allegations of prejudicial error are that the trial court prejudicially erred: 1) in failing to sustain the motion to discharge the jury made during the cross-examination of the witness Jordan; 2) in failing to sustain defendant's objections to questions propounded to State Trooper Decker; and 3) in the giving of Instruction P-3. The defendant also contends the verdict was excessive and the defendant should

have a remittitur of "* * * at least $10,000.00."

With respect to defendant's allegation of prejudicial error resulting from the questioning of the witness Jordan, the plaintiff contends such conduct was approved by this court in Leavitt v. St. Louis Public Service Co., Mo.App., 340 S.W.2d 131. In the Leavitt case, defendant's counsel developed on direct examination that one Atkins, who took the movies shown to the jury in that case, was a special investigator but did not inquire as to whom he was employed by or if he was self-employed. Pointing out there was no question but that Atkins' employer was interested in the outcome of that case as shown by the record of inquiry made of defendant's counsel by plaintiff's counsel out of the hearing of the jury and prior to voir dire, this court held that:

> "* * * As the cases heretofore cited reveal, under the circumstances plaintiff had the right to have the jury know not only that Atkins was employed by Transit Casualty Company, since it affected his credibility and the weight to be given to his testimony, but also the relationship of Transit Casualty Company in the case." (citing cases)

To the same effect, see Wren v. St. Louis Public Service Co., Mo.App., 355 S.W.2d 365. The distinction between the inquiry in Leavitt and Wren and that in this case is apparent. If by the question, "Is that this type of case, is this a insurance case?" plaintiff's counsel sought to show who employed his employer, then there was a proper way to do it. In fact, the transcript shows that after the objection which this question provoked had been ruled upon, plaintiff's counsel attempted to do that very thing and in a manner that was not objectionable under the factual situation here present. The result was that Jordan stated he did not know who employed his employer, Allen Commercial Service, until after he took the movies. Nevertheless, the questioning on the issue illustrated clearly the acceptable method of attempting to show the connection between Jordan's employer and the defendant's insurance company. However, this method was not followed until after the objection to the question "* * * is this a insurance case?" This court cannot agree that the situation in the instant case is governed or controlled by the Leavitt and Wren cases.

However, we cannot sustain defendant's allegation of prejudicial error. It is to be noted that this question was never answered, the objection was sustained and that defendant's counsel withdrew his request that the trial court instruct the jury to disregard the question. Therefore, the question presented is whether the asking of this one question, standing alone and unrepeated elsewhere in the proceedings, of itself requires us to rule that the trial court abused its discretion in not declaring a mistrial. Such a ruling would be unwarranted under the circumstances here present. We are not to be understood as requiring defendant's counsel to wait until the question is answered before interposing his objection; but if the asking of this one question is so prejudicial as to require us to hold it an abuse of discretion not to discharge the jury upon the asking of it, surely it was prejudicial enough to require defendant's counsel to press his request that the jury be instructed to disregard it. This he did not do and, under these circumstances, we cannot hold it an abuse of discretion not to discharge the jury.

By her second allegation of prejudicial error, the defendant contends that we should reverse this judgment and remand this case due to the trial court's action in allowing the State Highway Trooper to testify, over objection, what was the proper lane for defendant's eastbound car. When allowed to answer, the trooper replied "As far to the right as possible, there is no dividing line on this street." It is obvious that the trooper was relying upon the old statutory rule that a vehicle should be driven as close to the right-hand side of the highway as

practicable. Section 304.020(2), RSMo 1949, V.A.M.S., containing such language was repealed in 1953 by the deletion of that section and the enactment of Sections 304.014 and 304.015, RSMo 1959, Laws of Missouri, 1953, p. 587, V.A.M.S. These sections provide that a vehicle shall be driven upon the right half of the roadway with certain exceptions not applicable in this case. This is not prejudicial error. The defendant admitted that she was on the wrong side of the road and explained what caused her to so operate her automobile. A fair reading of this transcript discloses that this matter was not an issue in the trial but was an uncontested and admitted fact all the way through the trial. Accordingly, we find no merit in plaintiff's contention of prejudicial error in this regard.

The result of our ruling on these two allegations of prejudicial error is that we find no error requiring a new trial on the whole case.

Instruction P-3 reads as follows:

"The Court instructs the jury that if you find for the plaintiff under the evidence and other instructions, in estimating and determining the measure of his damages, you should take into consideration, in connection with all the facts and circumstances in evidence, the bodily pain and suffering and mental anguish, if any, endured by him, and resulting from the injuries received, if any; the character and extent of his injuries, if any, *and whether they are permanent in their nature;* the extent, if any, to which he has been prevented and disabled by reason of such injuries, if any, from working and earning a livelihood for himself; *the extent, if any, to which you may reasonably believe from the evidence, if you so believe, he will be disabled during the future of his life by reason of said injuries, if any;* his necessary expenses, if any, for medical attention in endeavoring to be cured; and may find for him such sum as, in the judgment of the jury under all the evidence in the case,

will reasonable compensate him for the injuries received." (Emphases supplied.)

Defendant's contention with regard to the giving of this instruction is that it authorizes an award for double damages. In her motion for new trial, defendant did contend that prejudicial error was present because the instruction listed certain matters for the jury's consideration and then authorized the jury to find for plaintiff "* * * such sums as, in the judgment of the jury under all the evidence in the case, will reasonable compensate him for the injuries received." However, doubtless due to her recognition that such a position cannot be maintained, Moss v. Mindlin's, Inc., Mo., 301 S.W.2d 761, that is not defendant's contention in his brief. Neither is the defendant contending the instruction authorizes double damages, because it authorized the jury to consider both permanent injuries and the extent to which plaintiff *"has been"* prevented and disabled from working and earning a livelihood for himself. The words "has been" refer to the past and this clause of the instruction clearly refers to past loss of earnings. Neither could that contention be sustained for, as pointed out in Moss v. Mindlin's, Inc., supra, 301 S.W. 2d at 769, the rule in this state is that a permanent injury is a separate element of damage aside from pecuniary loss (see Meierotto v. Thompson, 356 Mo. 32, 201 S. W.2d 161) and, quoting from the Moss case at the citation given above, "* * * impairment of earning capacity, past or future, is not necessarily included in, nor does it necessarily result from, a permanent injury."

What defendant does contend, as stated in her motion for new trial and in her brief, is that this instruction is prejudicially erroneous as authorizing double damages because it lists as an element of damage permanent injuries in one clause and then goes on in another clause to allow the jury to consider "* * . *  the extent, if any, * * *  he will be disabled during the fu-

ture of his life by reason of said injuries * * *." It is to be noted the instruction does not limit this disability to working and earning a livelihood, i. e., to future earning power, but contents itself with the words "* * * disabled during the future of his life * * *." This has the effect of resubmitting for the jury's consideration in awarding damages the same matters covered by the item as to the permanency of the injuries and constitutes reversible error as authorizing double damages.

 The plaintiff urges that we follow the authority in this state that where the damages awarded are not excessive and fairly represent the damages shown by the evidence an erroneous or inaccurate or repetitious instruction upon the measure of damages will not necessarily constitute reversible error. Kelsey v. Kelsey, Mo. App., 329 S.W.2d 272; La Plant v. E. I. Du Pont De Nemours & Co., Mo.App., 346 S.W.2d 231 at 244. It should be pointed out that the key word in that rule is "necessarily". In this case, the wording of this instruction so clearly authorizes a double recovery that we must hold it to be reversible error. Especially is this true in this case where the plaintiff's own doctor diagnosed plaintiff's injury as "severe lower back sprain with sciatic irritation." The plaintiff's total doctor bill was $328.00, and he returned to his regular job 6 weeks and 2 days after the injury with a loss of $390.00 in wages for that period. Neither are we persuaded otherwise because plaintiff did testify he had a part-time job that he had not been able to work at since the accident with a resultant loss of $2,808.00 in wages up to the date of trial.

We hold that the giving of Instruction P–3 constitutes reversible error for the reasons herein given and accordingly this judgment should be reversed and this cause remanded for new trial upon the issue of damages alone. Due to this holding, we do not reach a consideration of defendant's contention that this verdict was excessive. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The judgment is reversed and the cause remanded to the trial court for further proceedings on the issue of damages only.

WOLFE, Acting P. J., and J. MORGAN DONELSON and JACK P. PRITCHARD, Special Judges, concur.

RUDDY, P. J., and ANDERSON, J., not participating.