Argued July 12, reversed and remanded September 10, 1973

CREEL, *Respondent, v.* SHADLEY ET AL, *Appellants.*

513 P2d 755

*Robert Thomas,* Klamath Falls, argued the cause and filed a brief for appellants Shadley.

*Enver Bozgoz,* Klamath Falls, argued the cause and filed a brief for appellants Weeks and Hicks.

*Sam A. McKeen,* Klamath Falls, argued the cause and filed a brief for respondent.

HOWELL, J.

This is an action for assault and battery arising out of an altercation between plaintiff and the four defendants, who are members of the Klamath Indian tribe. A jury returned a verdict for plaintiff for general, special and punitive damages. The defendants appeal from the judgment entered on the verdict. We reverse and remand for a new trial.

The incident occurred on the evening of June 17, 1971, in front of a tavern in Chiloquin. Plaintiff, a timber faller and a former police officer in that city, had parked his car in front of the tavern, intending to purchase a six-pack of beer to take home. About 20

Klamath Indians, most of whom had been drinking, were milling about the street. There was evidence that the Indians were beating on the hoods of autos as if they were tom-toms, shouting obscenities about police officers, and making statements that they were going to take Chiloquin away from the whites and were also going to recover Alcatraz Island for the Indians. As the plaintiff started for the tavern to get the beer, one of the defendants offered him a drink of whiskey from his bottle. Plaintiff accepted the drink. The defendant's generosity ceased at this point, because almost immediately thereafter the plaintiff was knocked down several times and kicked by various members of the group of Indians. There was evidence that all four defendants participated in the melee.

The plaintiff alleged that he suffered various bruises and lacerations, his nose was bruised and damaged and "a pre-existing condition of said nose was aggravated," and that several teeth were loosened and damaged. After awarding general and special damages, the jury awarded plaintiff $45,000 punitive damages.[1]

The defendants together set forth approximately 35 assignments of error. Most of the assignments involve incidents occurring during the trial or the admissibility of evidence which will probably not occur in a subsequent trial. Other assignments are completely frivolous.

We find it necessary to reverse because two jurors were improperly excused from the jury panel.

---

[1] When the jury returned the verdict into court and a poll was requested, the jurors all invoked the Fifth Amendment to the United States Constitution and refused to be polled. Later, a poll was conducted.

One of the regular circuit judges of Klamath County was disqualified by one of the defendants herein, and a pro tempore circuit judge was assigned to hear the case. During the trial, counsel for defendants advised the trial judge that two jurors who were on the jury panel had been excused from sitting on the case by the disqualified circuit judge. Both jurors lived in Chiloquin. One was a member of the Klamath Indian tribe, and the other was the wife of a member of the tribe. An examination similar to a voir dire examination was conducted of the two jurors. One stated that she was excused by the disqualified circuit judge because he was aware that "she knew all the people involved" in the case. The other juror testified that she was advised by the judge "that my services wouldn't be required and I told him that I didn't know any of the parties involved and he said just the same their [sic] all Indians and your services won't be required, you can go home." The defendants' motion for mistrial was denied.

The voir dire examination as conducted did not show that either juror would have been subject to a challenge for actual bias, and if the jurors were to have been excused it would have required a peremptory challenge.

■ As a general rule, when a judge has been disqualified he is without authority to act further in any judicial capacity in the case, but he is not prevented from performing formal or ministerial acts. 48 CJS 1105, 1106, Judges § 97 (1947); 46 Am Jur 2d 252, 253, Judges § 230 (1969).

Neither of the parties in this action has cited the decision of this court in *State v. Nagel,* 185 Or 486, 202 P2d 640 (1949). There, the circuit judge of

Klamath County—at that time, the Honorable David R. Vandenberg—was disqualified from presiding in the case because his daughter was the complaining witness and Judge Vandenberg himself was to be a witness. Subsequent to his disqualification, Judge Vandenberg summoned an additional number of jurors to fill the jury panel and also excused certain jurors because they had the right, on application, to be discharged from further jury service after serving four weeks. ORS 10.050.

This court, by Mr. Justice Lusk, held that the drawing of the additional jurors and excusing them for the reasons mentioned were "lawful and authorized orders made by Judge Vandenberg in the ordinary course of the administration of the business of this court. They did not, in our opinion, impair the integrity of the judicial process in this case nor prejudice the defendant's right to a trial by a fair and impartial jury." 185 Or at 512-13.

However, it is important to note that the opinion also states:

"If Judge Vandenberg had taken any part in the qualification or selection of the jurors to try the defendant we would reverse this conviction without any hesitation." 185 Or at 503, 504.

■■ Unfortunately, in the instant case the disqualified judge did take a part in the qualifications of the two jurors to try the case. The testimony of the two jurors was not controverted, and the fact that they were members of the Klamath Indian tribe, lived in Chiloquin, or knew the parties involved did not authorize the trial judge to excuse them. Even though a trial judge is not disqualified he should not excuse jurors for actual bias before the trial. Our statutes

ORS 17.155 and 17.160 contemplate that challenges for actual bias be taken by the plaintiff or the defendant during the voir dire examination at the time of trial. In the case at bar, we wish to emphasize, however, that we do not question the motives or the good faith of the judge because we are confident that he believed the jurors would eventually be disqualified for the reasons mentioned.

■ As this action must be reversed, we note some other assignments of error. The jury should not have been instructed regarding an aggravation of a pre-existing condition of plaintiff's nose because there was no evidence to support it. The court also instructed the jury that they should consider any future pain or discomfort and impairment of future earning capacity in assessing plaintiff's damages. The defendants contend that such instructions should not have been given because there was no evidence that plaintiff received a permanent injury and would suffer future pain or discomfort and there was no evidence of impairment of future earning capacity.

■■ A permanent injury has been defined by this court as one which will last during the life of the injured person. *Skultety v. Humphreys,* 247 Or 450, 431 P2d 278 (1967). Obviously, the loss of plaintiff's teeth constituted a permanent injury. We also stated in *Skultety* that permanent injury will usually include future pain and discomfort. In the instant case plaintiff obtained two partial dental plates after the altercation. There was evidence that nine months after the assault and battery the plaintiff's partial plates were still "hurting" him and that he had difficulty speaking. The instructions on permanent injury and future pain and discomfort were proper.

The court should not have instructed on impairment of future earning capacity. Impairment of future earning capacity does not necessarily result from a permanent injury. A person may have an injury which meets the definition of a permanent injury and still not suffer any loss of future earning capacity. *Anthes v. Anthes,* 258 Iowa 260, 139 NW2d 201 (1965); *Waymire v. Carter,* 366 SW2d 74 (Mo App 1963); 25 CJS Damages 727, § 40 (1966). In the case at bar there was no evidence from which a jury could find a loss of future earning capacity. Plaintiff's two partial plates, replacing three teeth he lost as a result of the altercation plus five teeth he had lost previously, did not interfere with his earning capacity. We realize that in other circumstances a loss of teeth could interfere with an individual's working capacity or impair his earning power, but such is not true in the instant case. *Honeycutt v. Wabash Railroad Company,* 313 SW2d 214 (Mo App 1958).

Reversed and remanded.

McAllister, J., concurs in the result.