Argued and submitted November 2, 1984, affirmed February 27, 1985

SHIVERS,
*Respondent,*

*v.*

RINEY,
*Appellant.*

(6572-83; CA A31456)

695 P2d 951

William M. Holmes, Bend, argued the cause for appellant. With him on the briefs was Gray, Fancher, Holmes & Hurley, Bend.

Steven J. Pierce, Ontario, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

In this personal injury action, defendant[1] appeals from a judgment entered on a verdict for plaintiff. We affirm.

Plaintiff injured his right hand while repairing defendant's combine. The injury occurred when defendant engaged the combine's separator (the part which threshes the wheat), causing plaintiff's hand to be rotated through the pulley mechanism he was repairing.

Plaintiff's complaint, amended to conform to the evidence, alleged, *inter alia,* that as a result of the injury, he had sustained a loss of earning capacity in the sum of $10,700, and would sustain a loss of future earning capacity in the sum of $350,000. The trial court instructed the jury that, as an element of general damages, it could consider the sum that would reasonably compensate plaintiff for any impairment of future earning capacity and, as an item of special damages, the amount of impaired earning capacity plaintiff suffered between the date of the injury and the trial, not to exceed $10,700.[2] The jury returned a verdict for plaintiff, showing plaintiff's "total money damages" as $220,000, and found that plaintiff was 43 percent and defendant 57 percent at fault. Accordingly, the trial court entered judgment for plaintiff in the amount of $125,400.

Defendant's first three assignments of error raise the question of whether there was sufficient evidence to submit plaintiff's claim for pretrial and post-trial impaired earning capacity to the jury. We turn to a review of the evidence.

Plaintiff testified at length about his work history. He testified that he had worked for a truck distributorship, managed an automobile dealership, sold trucks for a GMC dealership and owned and operated a road construction business for approximately ten years in Arizona and Nevada. From 1973 to 1976, he had worked as a project manager for a construction company in Nevada. He had directed and

---

[1] The term "defendant" means defendant Riney, the only defendant involved in this appeal.

[2] Defendant does not challenge the trial court's characterization of pretrial impairment of earning capacity as "special damages." *See Conachan v. Williams,* 266 Or 45, 511 P2d 392 (1973).

assisted in the construction from the site grading through to the finish work and was involved in sales. From 1976 to 1979, he held a similar position with another construction company.

In 1978, he and his wife began building and selling homes. He performed a substantial amount of work on the nine homes that they completed. He did the site grading, laid the foundations, put in the subfloors, installed the septic tanks, put up the siding and did some finish work. He subcontracted the remaining work. He explained how he paid himself and the subcontractors from the construction loan he had secured and discussed how much he had earned.

Because of the injury to his hand, plaintiff can no longer do his former kind of work alone. His plans are to continue to build two homes a year, starting in Boise, Idaho. He estimated that it would cost him $10,000 per home to hire someone to perform the work he now cannot do.

Plaintiff and his wife moved to Oregon in 1980. He began working at Condon Motors in Condon, where, as manager, he directed sales and service. He did not intend to stay at Condon Motors indefinitely, but planned to return to building and selling homes. He owned a 240 acre ranch in Adrian, Oregon. During 1981 and 1982 he leased the ranch. In 1983, he grew some crops, but most of his land was in a "payment in kind" program. Plaintiff estimated that it would cost him $14,820 annually to hire someone to do the work on the ranch that he could no longer do but that he would no longer have to hire the part-time help he ordinarily would hire. With respect to his claim for pretrial loss of earning capacity, he testified that he had paid $10,700 to have work done on his ranch which he ordinarily would have done himself. Income tax returns introduced by defendant reflected those expenses.

A plastic and reconstructive surgeon who treated plaintiff testified that plaintiff had dislocated certain joints in his hand. In his opinion, the injury was permanently disabling. He estimated that plaintiff, at the time of trial, had a 37 percent loss of the use of his right hand. He stated that further surgery would not improve the hand.

An orthopedic surgeon who had examined plaintiff testified that, as a result of the injury to his hand, plaintiff suffered from lateral epicondylitis, an inflamation of the

tendons in the area of his elbow. He stated that the condition would be permanent if plaintiff continued to perform the type of work he had done in the past.

A rehabilitation specialist to whom plaintiff was referred for an assessment of his vocational impairment, testified that there were many aspects of plaintiff's previous work that he could no longer perform. Regarding his job at Condon Motors, she testified that he lacked the ability for fine manipulation of nuts and bolts and small tools and that he could no longer repair farm equipment or fabricate parts. She testified that he could lift objects weighing up to fifty pounds in his left hand but had to use two hands for heavier objects. She stated that he could probably work in sales, but, being right-handed, he would have difficulty writing. Finally, she testified that plaintiff was limited in the work he could do on his farm.

■ In *Conachan v. Williams,* 266 Or 45, 511 P2d 392 (1973), the court discussed the type of proof needed to establish a claim for impaired earning capacity. The same kind of evidence is required to prove both pretrial and post-trial loss of earning capacity. 266 Or at 61. The court adopted the rule proposed by Justice O'Connell in his dissenting opinion in *Baxter v. Baker,* 253 Or 376, 451 P2d 456, 454 P2d 855, *overruled on other grounds, Conachan v. Williams, supra:*

"* * * The rule as proposed by the *Baxter* dissent (at 391-92) is as follows:

" "* * * [t]he measure of damages for the plaintiff's pre-trial and post-trial loss, whether denominated loss of earnings or impairment of earning capacity, is basically the same and should not be treated differently. Plaintiff is entitled to recover the amount of wages he would have earned but for the injury. The loss should be measured from the time the injury impaired the plaintiff's capacity to earn wages until the disablement ends. It is obvious that plaintiff's loss both before and after trial can be approximated only and that the calculation of the loss must rest upon factors which can be employed only in terms of probabilities, including the probable period of impairment, the plaintiff's capacity to earn over that period, i.e., what his services would have brought in the labor market taking into account not only plaintiff's capacity at the time of injury but also his probable chances for promotion

(or demotion), the probability that the plaintiff would have employed his skill or talent, taking advantage of available opportunities to work, and other pertinent factors.'

"We now adopt that rule as consistent with the views expressed by many authorities to the effect that in determining the amount to be awarded for impairment of earning capacity, proof of lost wages is neither required, nor is the amount of such lost wages necessarily controlling in determining the amount to be awarded for impairment of earning capacity. In other words, proof of loss of specific wages is evidence of impairment of earning capacity, both before and after the date of trial, but an impairment of earning capacity may also be proved by other evidence." 266 Or at 55-57. (Footnotes omitted.)

The court also cited with approval the rule set forth in *Brown v. O.-W. R. & N. Co.,* 63 Or 396, 409, 128 P 38 (1912):

"A fair rule would seem in cases of this character to be that any evidence which would indicate fairly the capacity of the plaintiff to earn money in his usual vocation, and the probability of his being able to do so in the future should be admitted; but, where such evidence consists of more guesswork and speculation upon what might happen in the future, it should be excluded. Such testimony in any court is seldom, or never, conclusive, and merely furnishes one factor in solving the equation of a man's earning capacity."

Plaintiff's cost of hiring someone to do the work he is no longer able to perform is competent evidence to be considered by the jury with other evidence introduced such as his age, experience, health, strength, habits of industry, and life expectancy, in calculating his loss. *Shaw v. Pacific Supply Coop.,* 166 Or 508, 511, 113 P2d 627 (1941), *overruled on other grounds, Conachan v. Williams, supra.*

The evidence adduced in this case was sufficient to submit plaintiff's claim for impaired earning capacity, both pretrial and post-trial, to the jury. It was precisely the type of evidence contemplated by *Conachan, Shaw* and *Brown.* Plaintiff's cost of hiring extra help, combined with the other evidence, was sufficient to permit submitting to the jury the claim for pretrial impairment of earning capacity. The evidence that plaintiff sustained an injury that will permanently affect his earning capacity was sufficient to entitle him to an

instruction on impairment of future earning capacity. *Holder v. Petty,* 267 Or 94, 99, 514 P2d 1105 (1973); *Creel v. Shadley,* 266 Or 494, 500, 513 P2d 755 (1973). In addition to that evidence, plaintiff introduced evidence of the work he did in the past, which he could no longer do alone, his past earnings and the costs that he anticipated incurring in the future as a result of his injury. The trial court did not err in submitting the claim to the jury. *Conachan v. Williams, supra; see also Tavenner v. Figini,* 273 Or 415, 541 P2d 437 (1975), and *Kinney v. General Construction Co.,* 248 Or 500, 435 P2d 297 (1967).

■    Defendant's suggestion that plaintiff's claim must be proven with "reasonable certainty" and must be supported by evidence from which the jury could calculate a "net loss" was expressly rejected in *Conachan:*

> "* * * [T]he evidence required to support a claim for impairment of earning capacity need not be 'capable of exact monetary computation' and any evidence which would 'indicate fairly the capacity of the plaintiff to earn money in his usual vocation' should be admitted." 266 Or at 64.

*See also Tavenner v. Figini, supra,* 273 Or at 418.

■■    Defendant contends that the evidence presented by plaintiff was too speculative. In particular, defendant argues that plaintiff's testimony concerning his plans to build homes in Boise is too speculative, because he has never built homes there, he introduced no evidence concerning the costs or anticipated earnings resulting from such construction and he does not possess an Idaho contractor's license. Claims for impairment of future earning capacity are inherently speculative to some extent, but that is not a bar to their recovery. *See Conachan v. Williams, supra.* Plaintiff presented ample evidence from which the jury could calculate, with as much certainty as can be expected in this type of case, his impairment of future earning capacity. Regarding his plans to build homes in Boise, his long experience in supervising the construction of homes and his experience in personally building nine homes persuades us that his testimony was not too speculative. *Cf. Weinstein v. Wheeler,* 127 Or 406, 257 P 20, 271 P 733 (1928) (letters written and received by plaintiff, prior to accident in which he was injured, concerning his intention to study for the concert stage, were too uncertain

and speculative to show what he proposed to do in the future).

■        Defendant's fourth assignment is that the trial court erred "in admitting the testimony and instructing the jury on future lost earning capacity when plaintiff did not reduce the value of the claim to present day value." We decline to address the merits of this assignment, because defendant did not preserve the error, if any, in the trial court. ORAP 7.19(5); *Shields v. Campbell,* 277 Or 71, 559 P2d 1275 (1977).

During plaintiff's case in chief, defendant objected to plaintiff's testimony concerning his impaired earning capacity. After an off-the-record discussion between the court and counsel, the court overruled the objection and proceeded to explain what evidence would be admissible on the issue of impaired earning capacity. The following colloquy occurred between the court and defendant's attorney:

"[THE COURT:] Mr. Holmes, you'll want to continue to have an objection to that line on both pre-trial and post-trial?

"MR. HOLMES: Yes.

"I think we also discussed that you're going to instruct that any future earning capacity diminishment has to be reduced to present value.

"THE COURT: Yes, I am going to instruct to that. There's a case I have on that. In any event, I'm required to instruct that and I've added that to the uniform instructions.

"MR. HOLMES: For the record, I would make my objection on the basis that you have to specifically plead the amount and the circumstances, for pre-trial loss, for hired labor and, secondly, that to prove diminished earning capacity you must first show what the earning capacity was before the accident and then the earning capacity after the accident.

"I would also object that the plaintiff has to put in proof of the discounted value.

"THE COURT: That you may want to raise at a more appropriate time. He has failed to do that.

"MR. HOLMES: I'll move to strike later on.

"THE COURT: I'm going to overrule the objections you've made, on the basis that you've made them, and I'll give you a continuing objection through the evidence on that basis."

At the close of plaintiff's case, the court asked defendant's counsel whether he had any matters for the court's consideration, and he replied that, at that point, he did not. After defendant rested, defendant's attorney made a number of motions against the complaint but did not raise the issue regarding reduction of the claim to its present value. The court instructed the jury that "[a]ny award for future impairment of earning capacity must be reduced to its present value." After the jury instructions were read, defendant's attorney made the following objection:

"MR. HOLMES: To be consistent with some of the other objections I've had, I want to take exception to the instruction on general damages for future impairment of earning capacity and the special damage for the past loss of earning capacity."

It is apparent that defendant did not preserve the error he now asserts. With respect to the alleged error of admitting testimony on the issue of impaired future earning capacity without proof of the present value of plaintiff's claim, a fair reading of the record shows that the trial court thought that defendant's objection was premature and contemplated that defendant would move to strike that testimony at the close of plaintiff's case or move to strike the allegation of damages for impaired future earning capacity before the jury was instructed, if plaintiff had not, by that point, introduced sufficient evidence of the present value of his claim. Defendant's counsel evidently understood that, because he stated that he would "move to strike later on." He never did. By failing to do so, or otherwise raise the issue, he did not preserve the alleged error.

With respect to the alleged error of instructing the jury on impaired future earning capacity, defendant's exception had to be "particularly stated" in order to preserve the error for appellate review. ORCP 59H. Defendant's attorney only generally excepted to the court's instructions on impaired earning capacity. It is not clear whether his reference to "some of the other objections I've had" refers to his earlier objection concerning the plaintiff's failure to prove the present value of his claim or to other objections that he had made concerning the type of evidence needed to prove impaired earning capacity. In any event, he did not particularly state the grounds for his exception. In short, defendant's attorney did not present the trial court with the "sound, clear and articulate motion,

objection or exception" necessary to preserve the error alleged in his fourth assignment. *Shields v. Campbell, supra,* 277 Or at 77.

Defendant's fifth assignment is that the trial court erred in denying his motion to withdraw from the jury's consideration plaintiff's allegation that defendant was negligent "[i]n operating the combine without a safety guard in place." He argues that it was error to submit that allegation of negligence to the jury, because there was no proof of a causal connection between that allegation and plaintiff's injury. If there was no such causal connection, it was error to submit the allegation to the jury. *Alvarez v. Great North. Railway Co.,* 261 Or 66, 75, 491 P2d 190 (1971). We review the record in the light most beneficial to the party aided by the verdict. *Martin Engineering v. Opton,* 277 Or 291, 296, 560 P2d 617 (1977).

■ The evidence is that the safety guard was already removed when plaintiff arrived on the scene and that it was necessary to remove it in order to work on the pulley. Plaintiff testified that he did not think that defendant was at fault in removing the guard when he did, but he did say that if the guard had not been removed he could not have put his hand in the pulley. From that evidence the jury could conclude that defendant was negligent in operating the combine without the safety guard in place. The jury could reason that, even if defendant was not negligent in *removing* the guard, he was negligent in starting the combine without the guard in place and that, but for the removal of the guard, the injury would not have occurred.

■ Defendant's sixth assignment is that the trial court erred in submitting to the jury the claim that defendant was negligent "[i]n operating the combine and engaging the same for operation at a time when defendant Albert Riney knew or should have known that plaintiff was continuing to work on repair of the variable drive shaft." He contends that there is no evidence to support the allegation. Again, we review the record in the light most beneficial to plaintiff to determine whether there is any evidence that defendant was negligent in this respect. *Martin Engineering v. Opton, supra.*

Plaintiff testified that, after meeting defendant at the ranch where defendant was working, the two men drove the combine around a field to ascertain the source of the problem.

Plaintiff ascribed the problem to the variable speed pulley, located at the right rear of the combine. They inspected the pulley, and plaintiff put his hand through the pulley to point out certain springs located behind it. He testified that the two men "stood up close and leaned in and I pointed out the back side and we looked at the spring on the spring loaded pulley" and that he tugged and pulled on the pulley and the belts. They discussed what tools would be needed to make the repair. He saw defendant go around the rear of the combine to retrieve the tools from his truck. The last words plaintiff heard from defendant as defendant left to get the tools were, "What I need to do is * * *." Plaintiff then decided to try to "pop the pulley apart." As he was holding the belt, defendant engaged the separator, causing plaintiff's hand to be rotated through the pulley.

Plaintiff testified that he stepped back from the combine no more than two steps when defendant went to get the tools and that he remained close to the pulley at all times. He said that defendant should have known that he was continuing to work on the pulley, because he had just told defendant that he would try to pop the pulley apart and because he had tugged on the pulley and belts in defendant's presence. Plaintiff also introduced as evidence defendant's original answer, in which defendant admitted that "plaintiff was near the combine and had been conversing with defendant and assisting with the repair of the combine [and] that at the time of the accident plaintiff was continuing with the repair of the combine."

Defendant denied that he knew or should have known that plaintiff was continuing to work on the combine. He stated that plaintiff was five to six feet from the combine when he left him. He also stated that he told plaintiff that he was going to engage the separator in order to change the speed of the pulley and that plaintiff acknowledged that. He admitted that they had been looking at the pulley but denied having any discussion concerning tools.

The jury could find that plaintiff told defendant that he intended to try to pop the pulley apart and that defendant should have known that plaintiff was continuing to work on the pulley, because plaintiff had tugged on the pulley and

remained near the pulley just before defendant left. Furthermore, defendant's original answer supports the allegation. The trial court did not err in submitting this allegation of negligence to the jury.

Affirmed.