Argued and submitted January 11, affirmed September 6, 1995

# Harry DeVAUX,
## *Respondent,*

*v.*

# Stan PRESBY
# and Jeannie Presby,
## *Appellants.*

# (9301-00199; CA A81932)

902 P2d 593

Thomas W. Brown argued the cause for appellants. With him on the briefs were Kathleen J. Tesner and Cosgrave, Vergeer & Kester.

Steven A. Kahn argued the cause for respondent. With him on the brief was Kahn & Kahn, P.C.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

In this premises liability case, plaintiff, one of defendants' guests, was injured as a result of an attack by another of defendants' guests. The trial court entered a judgment on the jury's verdict for plaintiff, and we affirm.

We state the facts in the light most favorable to plaintiff. *See Sullivan v. Oregon Landmark-One, Ltd.*, 122 Or App 1, 3, 856 P2d 1043 (1993). Plaintiff was injured in an altercation with Thayer, who was defendant Jeannie Presby's brother and was living in a camper located on defendants' property. Thayer stabbed plaintiff through the upper left arm and into the chest, just below the heart. Plaintiff's arm sustained a two-inch cut that severed an artery and the flexor group of muscles, which controls finger movement. Plaintiff also suffered a large hole in his chest from the knife wound. As a result of his injuries, plaintiff has a radial nerve deficit which, even if repaired, would not return complete sensation. His hand occasionally opens or closes without warning, and he is sometimes unable to sense heat or cold.

At the time of his injury, plaintiff worked as a pump mechanic. He was unable to return to work for one month following the injury. Although he was able to lift some items and drive a forklift, he remained on light duty. He continued to lack strength in the injured arm and was unable to produce as he had before the injury. On at least one occasion, plaintiff burned himself on the job, because of his inability to sense heat or cold.

Plaintiff sued defendants for damages for his injuries on a theory of "premises liability," alleging both economic and noneconomic damages. At trial, defendants moved for a directed verdict on the ground that they did not own the "premises" on which the altercation with Thayer took place. Defendants submitted a proposed verdict form that would have permitted the jury to consider Thayer's fault in causing plaintiff's injuries, but the trial court declined to use that verdict form. Plaintiff submitted an instruction allowing the jury to award damages for lost earning capacity. Defendants objected to that instruction on the ground that there was insufficient evidence to send the issue to the jury. The trial court overruled the objection and delivered the instruction.

The jury then returned a general verdict in plaintiff's favor for $100,000, finding plaintiff 20 percent at fault and defendants 80 percent at fault. The trial court entered judgment in plaintiff's favor for $80,000.

■ On appeal, defendants assign error to the trial court's ruling on their directed verdict motion, to the court's failure to allow the jury to consider the fault of Thayer and to the trial court's failure to remove impairment of future earning capacity from the jury's consideration. We affirm without discussion the trial court's ruling on the directed verdict motion; based on our review of the record, there was sufficient evidence of defendants' ownership and control of the premises to allow the claim to be submitted to the jury. We similarly affirm the trial court's ruling that the jury could not consider the fault of Thayer, who was not a party to the litigation. The statute on which defendants base their argument has now been construed to preclude such comparative fault. *Davis v. O'Brien*, 320 Or 729, 891 P2d 1307 (1995) (construing ORS 18.485). We turn to defendants' argument that the trial court erred in allowing the jury to award damages for loss of future earning capacity.

■ Defendants argue that the evidence is insufficient to satisfy the statutory requirement that economic damages be "objectively verifiable monetary losses." ORS 18.560(2)(a). According to defendants, plaintiff's evidence of loss of future earning capacity is solely subjective, consisting of his own testimony about his inability to perform as he once did. That evidence, argue defendants, falls short of the statutory requirement that there be proof of an objective, quantified monetary loss.

Plaintiff argues that defendants failed to preserve their objection to the award of damages for loss of future earning capacity, because they failed to move to strike the allegation of such damages from his complaint, because they failed to request a verdict that segregated different types of damages, and because they failed to mention ORS 18.560 as the basis for their objection. Plaintiff then asserts that, on the merits, defendants are incorrect, because the statute was not intended to impose any particular proof requirements to obtain damages for loss of future earning capacity. According to plaintiff, the sufficiency of proof of that type of damages is

controlled by a common law standard, which was satisfied in this case.

We begin with plaintiff's three arguments concerning preservation, and conclude that each is without merit. First, there is no requirement that a party move to strike from the pleadings an allegation concerning damages for loss of future earning capacity as a predicate to challenging the sufficiency of the evidence in support of that allegation at trial. Plaintiff cites no authority for his argument to the contrary, and we are aware of none. Second, plaintiff's argument as to defendants' supposed failure to submit a jury verdict form that segregated economic and noneconomic damages fails as well. The fact is, defendants did submit such a proposed verdict form. Third, we conclude that defendants' exceptions were sufficiently specific. Our review of the record reveals that, although defendants did not cite the specific statute, the court and all parties were aware of the precise basis for defendants' objections.[1] *Davis*, 320 Or at 737-38.

We turn to the merits of defendants' assignment of error. Because the question presented involves the construction of a statute, we attempt to discern the legislature's intent, looking first to the text and context of the statute. In that first level of analysis, we assume that the legislature intends words of common usage to be given their plain, natural and ordinary meaning. If the legislature's intent is not clear from examination of the text and context, we examine, in addition, the legislative history of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993); *State v. Langley*, 314 Or 247, 256, 839 P2d 692 (1992), *adhered to* 318 Or 28, 861 P2d 1012 (1993).

---

[1] Indeed, the comments of plaintiff's counsel make it quite clear that everyone involved knew the subject of defendants' objection:

"This is the problem that comes up in every civil case since they changed the law on damages and they stuck, in my mind, future earning and future impairment of earning capacity under economic damages when it probably should have been left under noneconomic damages, but they did it to avoid a tort cap on future economic lost earnings, and it creates a problem in just about every civil case because it used to be you just had to prove you had some sort of disability and the jury would be able to award damages."

We begin, then, with the text of the statute and its context. ORS 18.560 defines "economic damages" as

"objectively verifiable monetary losses including but not limited to reasonable charges necessarily incurred for medical, hospital, nursing and rehabilitative services and other health care services, burial and memorial expenses, loss of income and past and future impairment of earning capacity, reasonable and necessary expenses incurred for substitute domestic services, recurring loss to an estate, damage to reputation that is economically verifiable, reasonable and necessarily incurred costs due to loss of use of property and reasonable costs incurred for repair or for replacement of damaged property, whichever is less."

ORS 18.560(2)(a). The provision was enacted in 1987 as part of a larger "package" of so-called "tort reform" legislation. *See generally* Kathy T. Graham, *1987 Oregon Tort Reform Legislation: True Reform or Mere Restatement?*, 24 Willamette L Rev 283 (1988). Under the 1987 law, all compensatory damages recoverable in an action "arising out of bodily injury" are divided into two classes: economic and noneconomic. Economic damages are defined as described above. "Noneconomic" damages are defined as

"subjective, nonmonetary losses, including but not limited to pain, mental suffering, emotional distress, humiliation, injury to reputation, loss of care, comfort, companionship and society, loss of consortium, inconvenience and interference with normal and usual activities apart from gainful employment."

ORS 18.560(2)(b). The statute imposes a "cap" of $500,000 on awards for noneconomic damages. ORS 18.560(1).[2] There is no cap on awards for economic damages.

■　　Although the term "economic damages" is defined as "objectively verifiable monetary losses," those defining terms are not themselves defined. The term "objectively" generally means "in an objective manner." *Webster's Third New International Dictionary* 1556 (1993). The word "objective" is, in turn, generally understood to mean:

---

[2] This court has since concluded that the cap on noneconomic damages is unconstitutional. *Tenold v. Weyerhaeuser Co.*, 127 Or App 511, 873 P2d 413. That fact, however, does not bear on what the legislature intended by imposing it and the significance of those intentions to the issues in this case.

"belonging to nature or the sensible world: publicly or inter-subjectively observable or verifiable esp. by scientific methods: independent of what is personal or private in our apprehension and feelings: of such nature that rational minds agree in holding it real or true or valid."

*Id.* The term "verifiable" is generally defined as "capable of being verified" and "susceptible to the possibility of being either theoretically or actually proved true or false by reference to empirical facts." *Id.* at 2543. Thus, at least as the terms are understood generally, "objectively verifiable" monetary losses suggests that there is monetary loss in an amount that is capable of confirmation by reference to empirical facts.

■ We are mindful that dictionaries do not necessarily reveal the intentions of the legislature. *Davidson v. Oregon Government Ethics Comm.*, 300 Or 415, 420, 712 P2d 87 (1985). We conclude, however, that the manner in which the legislature used those words in context strongly suggests that it intended no different or unusual meanings to be attached to them. In particular, we note that the legislature apparently intended to draw a significant contrast between "non-economic damages," defined as "subjective, nonmonetary losses," and the "objectively verifiable monetary losses" that are "economic damages." In so doing, the legislature relied on the same distinction between subjective and objective perception that exists in common usage.

The question remains whether, in describing "economic damages" as "objectively verifiable monetary losses," the legislature intended to impose a particular quantum of proof for recovery of such damages or, instead, merely intended to describe the category of damages to which the $500,000 cap does not apply. The description of "economic damages" does not, by its terms, describe a requirement of pleading or proof as a predicate to recovery. The statute does not, for example, say that "in order to recover economic damages," there must be proof of "economically verifiable monetary loss." The subjects of pleading or proof requirements are not mentioned in ORS 18.560.

■ What is mentioned in the statute is the division of the universe of compensable damages into "economic" and "non-economic" components, in order to define the damages to which the $500,000 cap applies. The legislature apparently

chose as the basis for determining which types of damages are or are not subject to the cap the extent to which a given type of damages is "objectively verifiable," that is, capable of verification through objective facts. Those types of damages that are inherently incapable of being so quantified are denominated "noneconomic" damages, subject to the $500,000 cap. Those types of damages that are capable of quantification are not subject to the cap. If, in a given case, a party fails to quantify damages that does not mean that they are any less *capable* of verification or any less "economic" damages for the purpose of ORS 18.560.

The foregoing reading of the statute is borne out by the fact that the legislature defined "economic" damages not as "objectively verif*ied*" monetary losses, but as "objectively verif*iable*" monetary losses. Thus, consistent with the dictionary definitions to which we have referred, the key is the extent to which damages are *capable* of verification by objective facts, not the extent to which they are verified at trial.

Our reading of the statute is further borne out by the fact that ORS 18.560(2)(a) does not merely define "economic damages," but also supplies a list of what "economic damages" include, and on the list is loss of future earning capacity. In that regard, we note that the statute does not say that loss of future earning capacity is included only if objectively verifiable. It says that, by definition, loss of future earning capacity *is* an objectively verifiable monetary loss.

That is how we have — at least implicitly — previously read the statute. In *Richmond v. Zimbrick Logging, Inc.*, 124 Or App 631, 863 P2d 520 (1993), *rev den* 318 Or 459 (1994), the defendant argued that the plaintiff homemaker could not recover damages for loss of future earning capacity, because there was no evidence that she ever had held a job or intended to obtain one. According to the defendant, the evidence failed to satisfy the requirement of ORS 18.560(2)(a) that such economic damages be "objectively verifiable." Without addressing the construction of the statute, we held that the evidence was sufficient to support the jury's verdict in her favor for economic damages, because the common law requirements for recovery of loss of future earnings had been satisfied. The fairly clear implication of that decision is merely what we plainly state in this case: ORS 18.560(2)(a)

does not impose any particular pleading or proof requirements for recovery of loss of future earning capacity.

■     Defendants argue that, even if ORS 18.560(2)(a) does not require proof of "objectively verifiable" losses, the trial court erred in sending plaintiff's claim for loss of future earning capacity to the jury, because under the common law requirements of proof, plaintiff's claim fails. According to defendants, this case is controlled by *Creel v. Shadley*, 266 Or 494, 513 P2d 755 (1973), in which the Supreme Court held that more than evidence of injury is required to recover loss of future earning capacity. Plaintiff insists that, under the more recent *Tavenner v. Figini*, 273 Or 415, 541 P2d 437 (1975), there is sufficient evidence in this case to warrant the trial court's decision to send the matter to the jury.

In *Creel*, the plaintiff attempted to recover damages for loss of future earning capacity for having lost his teeth in an altercation with the defendants. The court reversed a judgment on a jury verdict for the plaintiff, holding:

> "The court should not have instructed on impairment of future earning capacity. Impairment of future earning capacity does not necessarily result from a permanent injury. A person may have an injury which meets the definition of a permanent injury and still not suffer any loss of future earning capacity."

*Creel*, 266 Or at 500.

In *Tavenner*, the plaintiff was awarded damages for lost future earnings resulting from injuries sustained in an automobile accident. The evidence showed that he had injured his head, ribs and knee, all of which made it difficult for him to engage in his ordinary occupation of commercial fishing. A doctor testified that the plaintiff's knee would never really heal, and that it would likely wear out faster than normal. The court noted *Creel*, distinguished it and held that the evidence was sufficient to send the claim of lost future earning capacity to the jury:

> "In the ordinary case, and as a general rule, evidence that a plaintiff has sustained a permanent injury is sufficient to entitle him to submit to the jury the question whether there has been an impairment of his future earning capacity.

"The case of *Creel v. Shadley,* relied upon by [the] defendants, represents an exception to that rule. In that case we held that the loss of some teeth, replaced by partial plates, did not interfere with plaintiff's earning capacity in the work in which he was engaged.

"[The d]efendants' contentions that impairment of earning capacity must be shown 'with reasonable certainty' and must be supported by evidence from which the jury may 'arrive at a pecuniary value of the loss' have been expressly rejected by this court."

*Tavenner,* 273 Or at 417-18. (Citations omitted.)

The facts of this case are indistinguishable from those in *Tavenner* in all material respects. There is evidence that plaintiff has suffered a serious, permanent injury that directly affects his ability to perform his job. That is sufficient to entitle him to submit to the jury his claim for loss of future earning capacity.

Affirmed.