Argued and submitted July 17, 1992, resubmitted In Banc November 3, affirmed November 17, 1993, reconsideration denied February 16, petition for review denied March 8, 1994 (318 Or 459)

Patricia Elaine RICHMOND,
*Respondent,*
*and*
Bradford Ryan RICHMOND,
*Plaintiff,*

*v.*

ZIMBRICK LOGGING, INC.,
an Oregon corporation,
and Michael Alan Pyle,
*Appellants.*

(900484; CA A69264)

863 P2d 520

James G. Breathouwer argued the cause for appellants. With him on the brief was Breathouwer, Gilman & Mortland.

Anthony A. Allen argued the cause for respondent. With him on the brief was Gatti, Gatti, Maier, Jackson and Ledoux.

DURHAM, J.

## DURHAM, J.

Defendants appeal that portion of a judgment awarding plaintiff damages for impaired earning capacity resulting from her injuries in an automobile accident. We review for errors of law and affirm.

Plaintiff was injured when a logging truck, owned by defendant Zimbrick Logging, Inc. and driven by defendant Pyle, struck the car in which she was a passenger. Plaintiff is a homemaker and a minister's wife. She has been married since 1971. Since then, she has not been employed outside the home, except for odd jobs. At the time of the accident, four of plaintiff's five children were still at home, and she was "home schooling" the three youngest. Before the accident, plaintiff helped her husband in his work as a minister by volunteering at his church, assisting him with janitorial work and performing other church duties. She did not testify that she had plans to begin a career outside the home. Her husband testified that they did not have any such plans at the time of the accident. The parties stipulated that plaintiff incurred medical expenses of $5,971.60 for her injuries, and that her family spent $1,428.35 for household help while plaintiff was recovering. The jury awarded plaintiff non-economic damages of $30,000 and $37,399.95 in economic damages. Because the amount of special economic damages was $7,399.95, the award necessarily included $30,000 for impaired earning capacity.

■ Defendants assign error to the court's admission of and refusal to strike expert testimony on plaintiff's lost earning capacity, the court's refusal to strike plaintiff's claim for impairment of earning capacity and the giving of a jury instruction on impaired earning capacity. All of the assignments turn on defendants' legal theory that plaintiff must present evidence that she intended to be gainfully employed and failed to do so. ORS 18.560(2)(a) provides, in part:

" 'Economic damages' means objectively verifiable monetary losses including * * * loss of income and past and future impairment of earning capacity * * *."

Defendants argue that, in the absence of past earnings or an intention to work outside the home in the future, plaintiff has no "objectively verifiable" loss. Consequently, they claim

that there is no foundation of relevance for expert testimony on earning capacity, and no evidence from which the jury could find that plaintiff suffered an impairment of earning capacity.

However, plaintiff is not required to prove that she has worked in the past or intended to do so in the future. Oregon, like most jurisdictions, recognizes that the impairment of a person's earning capacity is an injury distinct from a loss of earnings. *Plourd v. Southern Pac. Transp. Co.*, 266 Or 666, 682, 513 P2d 1140 (1973).

> "In determining past and future loss of earning capacity the question is not whether plaintiff would have worked, by choice. A person is entitled to compensation for the lost *capacity* to earn, whether he would have chosen to exercise it or not." Harper, James and Gray, *The Law of Torts* 549, § 25.8 (2d ed 1986). (Footnote omitted; emphasis in original.)

That point was held to have particular relevance for lost earning capacity claims by homemakers in *Earl v. Bouchard Transp. Co., Inc.*, 735 F Supp 1167, 1172 (EDNY 1990):

> "Regardless of whether or not a plaintiff would have exercised the choice to work as long as he could have, he or she is entitled to damages 'measured by the extent to which [plaintiff's] capacity for earnings has been reduced.' Restatement (Second) of Torts § 924, comment c. *See also* 2 S. Speiser, C. Krause & A. Gans, *The American Law of Torts* § 8:27, at 630. In effect, the ' "economic horizon of the [plaintiff] has been shortened because of the injuries." ' *Burke v. United States*, 605 F Supp 981, 999 (D Md 1985).

> "There is no requirement that an injured plaintiff even be employed at the time of the accident in order to recover for impairment of earning capacity. * * *

> "Earning capacity is determined by what a plaintiff '*could* have earned even if he or she never worked to that capacity in the past.' 2 M. Minzer, J. Nates, C. Kimball, D. Axelrod & R. Goldstein, *Damages in Tort Actions* § 10.22[3][a]. * * *

> "This principle is most clearly illustrated by cases involving injured students, homemakers, and infants. * * * *Grimes v. Haslett*, 641 P2d 813, 818 n 3 (Ala 1982) ('The right of an injured homemaker to recover for impaired earning capacity regardless of whether she was employed before the injury

exemplifies the distinction between an award for lost earnings and an award for lost earning capacity.').

"At most, some courts have required that the plaintiff have been *employable* or *potentially* employable, rather than actually employed at the time of the accident. For example, in *Espana v. United States*, 616 F2d 41 (2d Cir 1980), the court of appeals observed that tort victims such as housewives or students who, prior to injury, have not earned as much as they could in the marketplace, are entitled to recover damages for loss of full time earning capacity. *Id.* at 43 n 2." (Some citations omitted; emphasis in original.)

*Conachan v. Williams*, 266 Or 45, 56, 511 P2d 392 (1973), underscores the point that the absence of evidence of loss of earnings is relevant evidence but does not foreclose an award for lost earning capacity:

"[I]n determining the amount to be awarded for impairment of earning capacity, proof of lost wages is neither required, nor is the amount of such lost wages necessarily controlling in determining the amount to be awarded for impairment of earning capacity. In other words, proof of loss of specific wages is evidence of impairment of earning capacity, * * * but an impairment of earning capacity may also be proved by other evidence." (Footnote omitted.)

Thus, a plaintiff who is not employed at the time of injury and does not submit proof of wage loss may prove a diminished earning capacity through other evidence.

Plaintiff presented the testimony of Andy Huckfeldt, a vocational rehabilitation counselor. Huckfeldt first calculated plaintiff's loss of earning capacity by estimating the value of her services as a minister's wife. He also calculated her earning potential by examining career alternatives based on her education and abilities. Using the 1987 census survey, he looked at the average earnings in the United States for a 38-year-old woman with a high school diploma. He multiplied the number of years until her retirement at 65 by the average earnings of such a person and arrived at a figure in excess of $459,540. Finally, Huckfeldt calculated plaintiff's potential lifetime earnings, if she were employed at $5.00 per hour, at approximately $280,000. He testified that plaintiff had lost half of that earning capacity, because her injuries limited her ability to work to 20 hours per week. The court instructed the jury that this final computation was the maximum that it

could award for impaired earning capacity. The jury awarded less than 25 percent of that figure. Defendants argue that Huckfeldt's testimony is irrelevant and should not have been admitted, because plaintiff has not worked and has "no ambition to work outside the home."

■        The Oregon Supreme Court, in *Wilson v. B. F. Goodrich*, 292 Or 626, 637, 642 P2d 644 (1982), refused to permit the generality of an expert's testimony about economic data to affect its admissibility:

> "None of this makes the expert's testimony inadmissible under the test whether it might be of appreciable help to the factfinder in projecting the value of a young person's earning capacity over his working life. The answer to the charge of speculativeness is that *the factfinder must arrive at such a conclusion with or without help, see Conachan v. Williams, supra,* 266 Or at 64; the question is whether the offered evidence is more help than it is misleading or confusing." (Emphasis supplied.)

The court upheld the admissibility of general statistical assumptions and economic data, because they could help the factfinder project the value of the youthful plaintiff's earning capacity over his working life:

> "The need for more individualized evidence increases as the expert's testimony is focused more narrowly, for instance, if he were asked to assume that an individual would work in a plywood plant instead of merely in some kind of production work, or that an employee might shift from an existing occupation into a specific different one or succeed in a narrow and competitive specialty such as the performing arts, as in *Weinstein v. Wheeler,* 127 Or 406, 257 P 20, 271 P 733 (1928). *It is the very generality of this economist's statistical assumption that saves its admissibility here.* For in the case of a young person disabled before establishing any regular work experience it surely is not less relevant to inquire in the most general terms what kind of work and earnings others of similar background statistically obtain over their working lives than to assume that such a person would work a lifetime at the statutory minimum wage, if at all." 292 Or at 636. (Emphasis supplied.)

The court held that, despite the inherent speculation in the task, the jury

> "necessarily must draw some inferences from the available evidence as to the individual's likely level of earnings and

continuity of employment over many years. *The factfinder must do so whether those inferences are aided by expert testimony or not.*" 292 Or at 633. (Emphasis supplied.)

The jury could draw the necessary inferences about plaintiff's diminished earning capacity from the evidence about the extent and permanence of her injury, her educational attainment, vocational and avocational skills, earning history, age and other facts that bear on the question whether the "economic horizon of the [plaintiff] has been shortened because of the injuries." *Burke v. United States, supra,* 605 F Supp at 999. Courts regularly permit juries to base their judgment on such evidence, especially in the case of an injured housewife:

"If the plaintiff was not actually earning anything at the time of injury, or if his earnings then fell demonstrably short of his earning capacity, the matter is necessarily speculative. Yet in such cases courts have often allowed juries to use their judgment (in effect, that is, to speculate) on the basis of whatever evidence is available. They regularly do so as to the probable future earning capacity of a child *and probably most courts do in the case of a housewife,* even without specific evidence of the value of such capacity." 4 Harper, James and Gray, *The Law of Torts* 553, § 25.8 (2d ed 1986). (Footnotes omitted; emphasis supplied.)

The trial court correctly determined that, as explained in *Wilson,* the generality of the expert's economic data and predictions obviated the need for plaintiff to demonstrate a substantial similarity between her future prospects and the expert's statistical assumptions. Any discrepancies could be explored during cross-examination or by competing evidence; as the *Wilson* court explained:

" '[A]ny failure by the offering party to demonstrate substantial similarity between himself and his expert witness's statistical model should go to weight rather than admissibility.' " 292 Or at 634.

We conclude that the trial court correctly determined that Huckfeldt's testimony was admissible because plaintiff was not required to provide a foundation that she intended to seek employment outside her home. That testimony and other evidence in the record adequately support the verdict for future impairment of earning capacity.

Affirmed.