694 A.2d 150

John ANDERSON, et al.

v.

Monteith LITZENBERG

No. 1065, Sept. Term, 1996.

Court of Special Appeals of Maryland.

May 28, 1997

552

554

M. Bradley Hallwig (Anderson, Coe & King, LLP, on the brief), Baltimore, for appellants, Bramble, Inc., and Anderson.

Joseph T. Williams, Baltimore, for appellant Cramaro Tarpaulin Systems, Inc.

James Lee Katz (Marc Seldin Rosen and Scanlan & Rosen, P.A., on the brief), Baltimore, for Appellee.

Argued before HARRELL and SALMON, JJ., PAUL E. ALPERT, Judge (retired), Specially Assigned.

HARRELL, Judge.

Monteith Litzenberg, appellee, filed suit against John Anderson, David A. Bramble, Inc. (Bramble), and Cramaro Tarpaulin Systems, Inc. (Cramaro), appellants, for injuries sustained in a traffic accident. A jury in the Circuit Court for Cecil County (Cole, J. presiding) awarded appellee $349,400, including $213,000 for lost earning capacity. Appellants Anderson and Bramble base their appeal on an evidentiary ruling and a jury instruction. Appellant Cramaro perches its appellate contention on a different evidentiary ruling and the trial court's denial of a motion for new trial. Due to appellants' failure to preserve most of their appellate contentions for our review, and because those that were preserved are lacking in merit, we shall affirm the judgment of the circuit court.

## *ISSUES*

Appellants Anderson and Bramble present the following questions, reordered and slightly rephrased as:

I. Did the trial court properly instruct the jury concerning spoilation of evidence?

II. Did the trial court err in admitting evidence as to the costs of hiring a replacement to perform work that appellee had personally performed prior to the accident in connection with his part-time residential real estate renovation and rental business?

Appellant Cramaro presents the following issues, rephrased as:

III. Whether the fact that the allegedly defective product was discarded before it could be examined or tested by an expert witness rendered any determination that an alleged design defect or negligence by Cramaro caused or contributed to the accident erroneous.

IV. Whether the trial court abused its discretion in denying Cramaro's Motion for New Trial as to the future loss of earning capacity award.

## FACTS

On 22 April 1993, at approximately 3:00 p.m., Mr. Anderson was driving a dump truck loaded with stone in Cecil County. At the time, Mr. Anderson was acting within the scope of his employment for David A. Bramble, Inc., a highway construction contractor. The truck driven by Mr. Anderson was owned by Bramble. To ensure that debris would not blow off from the truck bed, the truck was equipped with a tarpaulin load covering system manufactured and sold by Cramaro Tarpaulin Systems. This particular tarp system used a series of pulleys, cranks, and steel cables, enabling the operator to crank the tarp toward the front of the truck in an accordion-like fashion so that the truck could be loaded and unloaded. The cranking system could also extend the tarp over the truck bed to cover a load. Cramaro sold the tarp to Bramble approximately one year before the accident occurred. The tarp was installed onto the truck that Mr. Anderson was driving by Bramble personnel.

Mr. Anderson, while heading south on Maryland Route 213, approached a bridge spanning the C & D Canal. At this time, the tarp system was extended to cover the load contained in

the truck bed. As the truck began to traverse the bridge, Mr. Litzenberg, a twenty-two year old construction worker, was driving in a pick-up truck behind Mr. Anderson. While on the bridge, the tarp somehow became loose at the back of the truck bed and began to blow out into oncoming traffic. The tarp struck an oncoming vehicle, causing its driver to lose control. The oncoming vehicle crossed the dividing line and crashed, essentially head-on, into Mr. Litzenberg's truck. At the time of the accident, Mr. Litzenberg was employed full-time by his father's construction company and also worked part-time in his own rental property venture.

A state trooper who arrived at the scene after the accident testified at trial that he observed a piece of cable that was a part of the tarp system, noting that the cable was either frayed or broken through. The trooper instructed Mr. Anderson to remove those portions of the tarp system that remained on the road and then to proceed across the bridge to a nearby Department of Motor Vehicles (DMV) parking lot. Mr. Anderson did as he was instructed. Anthony Dimaggio, Director of Truck Operations for Bramble, testified at trial that he met Mr. Anderson at the DMV parking lot.[1] After Mr. Anderson completed his interview with the police, Mr. Dimaggio directed him to return to Bramble's yard in Chestertown.

The tarp and cables remained on the truck until an adjuster for Bramble's insurer inspected the tarp system. After the inspection, Bramble maintenance personnel removed the tarp system and discarded its remnants except for a segment of cable that Mr. Dimaggio had cut off. According to Mr. Dimaggio's trial testimony, he retained that particular segment of cable because he believed that it was the component of the tarp system that had failed. At trial, he ultimately conceded under cross-examination that he might have anticipated the possibility of a claim arising out of the injuries caused by the tarp system's malfunction. At the time that

---

1. Mr. DiMaggio stated that he was not permitted to go to the scene of the accident on the bridge.

Bramble discarded the remnants of the tarp system, however, no claims stemming from the 22 April accident were pending.

Appellee filed an Amended Complaint in the Circuit Court for Cecil County alleging negligence on the part of appellants Anderson and Bramble and alleging negligence and defective design on the part of Cramaro. In 1996, a jury trial was held from 22 January to 26 January, inclusive. At trial, Mr. Litzenberg's physician testified that, as a result of the neck and back injuries sustained by appellee in the accident, he would not be able to lift more than twenty pounds, and therefore, would be unable to perform construction work. The jury returned a verdict in favor of Mr. Litzenberg and awarded him $349,400 in damages, $213,000.00 of which was compensation for future loss of earnings. Following the circuit court's denial of appellants' post-judgment motions, Anderson, Bramble, and Cramaro timely noted this appeal. Additional facts will be supplied as necessary in our discussion of the various issues.

## ANALYSIS

### I.

Appellants Anderson and Bramble (hereinafter collectively referred to as "Bramble" in the Analysis) first contend that the trial court erred by not properly instructing the jury concerning the presumption that arises against a spoliator of evidence. In reviewing the propriety of a trial court's jury instruction, we must determine whether the requested instruction was a correct exposition of the law and whether that law was applicable in light of the evidence before the jury. *See, e.g., E.G. Rock, Inc. v. Danly,* 98 Md.App. 411, 633 A.2d 485 (1993). The rationale behind the later requirement is that instructions not supported by the evidence have the capacity to lead the jury away from the evidence actually presented.

At the close of all the evidence, the trial court initially instructed the jury concerning Bramble's liability as follows:

Destruction by a party gives rise to an inference or presumption unfavorable to the one who is the spoiler ... if the

intent was to conceal the nature of the defect. So [Number] 1, you have to find [the tarp] was destroyed.... But also you have to have when they did it, the intent was to conceal the nature of a defect. The destruction may be inferred to indicate a consciousness or awareness of the weakness of one's case.

Appellee objected to the form and substance of that instruction and persuaded the court to give the following new instruction:

[D]estruction of evidence by a person gives rise to an inference or presumption unfavorable to spoiler, and, secondly, if the intent was to conceal the nature of the defect the destruction must be inferred to indicate a weakness in the case.

This instruction prompted Bramble's counsel to counter with an objection of his own:

I object to the giving of the instruction of the spoilation of evidence instruction on the ground that the evidence in the case was insufficient to support it, in my view. The law requires evidence of a consciousness of guilt of an attempt to conceal before it would be appropriate, and there was none here.

The trial court overruled Bramble's objection to the revised instruction.

In *Miller v. Montgomery County,* 64 Md.App. 202, 214–15, 494 A.2d 761, *cert. denied,* 304 Md. 299, 498 A.2d 1185 (1985), Judge Bloom, writing for this Court, explained the effect spoilation of evidence might have on the spoliator's case as follows:

The destruction or alteration of evidence by a party gives rise to inferences or presumptions unfavorable to the spoliator, the nature of the inference being dependent upon the intent or motivation of the party. Unexplained and intentional destruction of evidence by a litigant gives rise to an inference that the evidence would have been unfavorable to his cause, but would not in itself amount to substantive proof of a fact essential to his opponent's cause. *See*

*Maszczenski v. Myers*, 212 Md. 346, 129 A.2d 109 (1957). The maxim, *Omnia praesumuntur contra spoliatem*, "all things are presumed against the spoliator," rests upon a logical proposition that one would ordinarily not destroy evidence favorable to himself. In this case, if the jury were to find that Montgomery County had, in fact, altered the MM3 [a component in the electromechanical system controlling traffic signals] but without fraudulent intent, it could infer therefrom that the MM3 was defective. . . . If, however, the jury were to find that Montgomery County had altered the MM3 with fraudulent intent to conceal the nature of the defect, such conduct may be taken as an indication of consciousness of the weakness of the county's case and a belief that its defense would not prevail without the aid of such improper tactics. Together with other evidence, that could lead to a further inference that Montgomery County tampered with the evidence because it was guilty of the wrong of which it was accused. . . .

In either event, the remedy for the alleged spoilation would be appropriate jury instructions as to permissible inferences. . . .

*Miller* makes clear that two levels of inferences could have been drawn from Bramble's discarding most of the tarp system. If the jury concluded that Bramble's decision to throw away the tarp was merely the product of innocent mistake, the jury could still presume that, at the time of the accident, the tarp was in a defective, or otherwise unfavorable, condition. If, on the other hand, the jury was convinced that Bramble had a fraudulent intent to conceal the nature of the tarp's defective condition, the jury could also infer Bramble's consciousness of the fact that its case was weak. Thus, under *Miller*, an adverse presumption may arise against the spoliator even if there is no evidence of fraudulent intent. As such, the judge's revised instruction fully comported with our pronouncement of Maryland law concerning spoilation of evidence in *Miller* and was, therefore, an accurate statement of Mary-

land law on this issue. *See generally Maryland Civil Pattern Jury Instructions* MPJI 1:7, cmt. 2. (3d ed. & 1996 Supp.).[2]

Despite Bramble's assertions to the contrary, we recognize the logic of Judge Bloom's analysis. Simply put, one does not ordinarily withhold evidence that is beneficial to one's case. Indeed, the converse is equally true: one maintains evidence that one believes will be beneficial to one's case. Further, our analysis in *Miller* derives support from the Court of Appeals's opinion in *Larsen v. Romeo*, 254 Md. 220, 255 A.2d 387 (1969). There, Larsen filed suit against Romeo resulting from damages sustained when a truck owned and operated by Romeo rear-ended Larsen's vehicle. At trial, Larsen's witnesses testified that the accident was due to a sudden and unexpected brake failure. The Court held that, because Larsen showed that the injury must have resulted either from Romeo's negligence or from a sudden and unexpected brake failure, his claim could not survive a directed verdict unless he eliminated brake failure as the proximate cause of his injuries.

At trial, Romeo testified that either he or a mechanic removed a piece of hose from his tractor, that he showed the mechanic that the hose had a leak, and then discarded the

---

2. For other authorities recognizing that a showing of bad faith is not a prerequisite for drawing a negative inference against the spoliator. See, for example, *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir.1995) (Niemeyer, J.); *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993); *Nation–Wide Check Corp. v. Forest Hills Dist.*, 692 F.2d 214 (1st Cir.1982); *Rhode Island Hosp. Trust Nat'l Bank v. Eastern General Contractors, Inc.*, 674 A.2d 1227 (1996). We acknowledge, however, that there is substantial authority to the contrary. *Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 878 (Fed.Cir.1986); *S.C. Johnson & Son, Inc. v. Louisville & N. R. Co.*, 695 F.2d 253 (7th Cir.1982); *Commercial Ins. Co. v. Gonzalez*, 512 F.2d 1307, 1314 (1st Cir.1975), *cert. denied*, 423 U.S. 838, 96 S.Ct. 65, 46 L.Ed.2d 57 (1975); *Berthold–Jennings Lumber Co. v. St. Louis, I.M. & S.R. Co.*, 80 F.2d 32 (8th Cir.1935), *cert. denied*, 297 U.S. 715, 56 S.Ct. 591, 80 L.Ed. 1001 (1936); *Trupiano v. Cully*, 349 Mich. 568, 84 N.W.2d 747 (1957); *Owsley v. Owsley*, 34 S.W.2d 558 (Mo.App.(1931). *See also Vick v. Texas Employment Comm'n*, 514 F.2d 734 (5th Cir.1975); *United States v. Coplon*, 185 F.2d 629 (2d Cir.1950), *cert. denied*, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952); *State v. Langlet*, 283 N.W.2d 330 (Iowa 1979); *Washington v. State*, 478 So.2d 1028 (Miss.1985); *State v. Council in Div. of Resource Dev.*, 60 N.J. 199, 287 A.2d 713 (1972).

hose. There was no indication that the decision to discard the hose was motivated by bad faith. In addressing the spoilation issue, the Court responded:

Assuming, without deciding, that Romeo destroyed this piece of hose, the only inference that may be drawn is that particular piece of hose which may or may not have been part of the brake system, was not defective. Such an inference does not negate Romeo's testimony that his brakes failed.

*Id.* at 228, 255 A.2d 387. Essentially, the Court was drawing an inference against Romeo, the spoliator, by concluding that because the hose was discarded, the jury could not assume that the hose was the cause of the brake failure. In other words, because Romeo discarded the hose, he could not rely on it as evidence inferring brake failure rather than negligence. *See also Maszczenski v. Myers,* 212 Md. 346, 355, 129 A.2d 109 (1957) (recognizing inference that suppressed evidence would be unfavorable even though court found no indication from facts of that case that evidence was discarded intentionally).

 Bramble correctly notes that the presumption that arises from a party's spoilation of evidence cannot be used by appellee as a surrogate for presenting evidence of Bramble's negligence in his prima facie case. Maryland Rule 5–301(a) addresses the effect of presumptions in civil actions by essentially codifying the approach to presumptions taken by the Court of Appeals in *Grier v. Rosenberg,* 213 Md. 248, 131 A.2d 737 (1957). *Grier* involved an automobile tort action wherein the Court established a rebuttable presumption that the driver of a vehicle is the actual owner's agent. In explaining the effect of this presumption, the Court stated:

[A]fter the plaintiff has offered proof of the ownership of the automobile in the defendant, if the defendant does not offer any evidence on the issue of agency, the Court should instruct the jury that if they find as a fact that the defendant owned the car, they must find that he is responsible for the negligence (if any) of the driver. If the defendant does present evidence to show that driver was engaged on busi-

ness or a purpose of his own, it may be so slight that the Court will rule it insufficient to be considered by the jury in rebuttal of the presumption, in which case the Court should grant the same instruction it would have granted if the defendant had offered no evidence on the issue. The evidence may be so conclusive that it shifts the burden or duty of going forward with the evidence back to the plaintiff, in which event the defendant would be entitled to a directed verdict, if the plaintiff does not produce evidence in reply, unless there is already evidence in the case tending to contradict defendant's evidence. The evidence, however may fall between the two categories mentioned above, in which event the issue of agency should be submitted to the jury (internal citations omitted).

*Id.* at 254–55, 131 A.2d 737. In other words, a presumption does not necessarily shift the burden of persuasion. Rather, it merely satisfies the burden of going forward on a fact presumed and *may* satisfy the burden of persuasion if no rebuttal evidence is introduced by the other side. When the responding party introduces rebutting evidence, the presumption often is sufficient to generate a jury question on the issue, despite the fact that the beneficiary of the presumption has not produced any other evidence on the subject. *See generally,* Alan D. Hornstein, *The New Maryland Rules of Evidence: Survey, Analysis and Critique,* 54 Md. L.Rev. 1032, 1048–49 (1995). Stated differently, the party favored by the presumption is not relieved of the requirement of presenting evidence to establish a prima facie case as to those issues for which he bears the burden of proof if the adverse party sufficiently rebuts the presumption. In such instances, the presumption merely enhances the probative value of other evidence adduced. We, therefore, disagree with Bramble's assertion that the trial judge's revised instruction regarding spoilation of evidence effectively shifted the burden of proof as to liability on to Bramble.

## II.

Bramble also contends that the circuit court erred in admitting evidence as to the present and future costs of hiring a

replacement contractor to perform the work that appellee had previously been able to perform in connection with his part-time residential real estate rehabilitation and rental business.[3] Appellee testified at trial that, prior to the accident, he had purchased four separate, distressed residential properties (and inherited a fifth) and performed most of the renovations on those properties himself. The types of work that he performed on his properties included installation of porches, remodeling of kitchens, installation of drywall, siding cabinets, ceilings, wallpaper, paneling, molding and mill work, and replacement of windows. He also testified that this work was representative of the type of projects he intended to engage in during the future. Finally, upon completion of the renovations he would attempt to rent the properties. Because the properties were improved through his efforts, appellee was able to obtain new, higher appraisals thereafter and refinance the original purchase money mortgages.

Mr. Litzenberg's income tax returns for 1991 through 1994, inclusive, were introduced in evidence.[4] For the years 1991, 1992, 1993 and 1994, Mr. Litzenberg reported on Schedule E of his federal tax returns in connection with his real estate enterprise taxable income of $6,803 loss, $11,835 loss, $79 income, and $263 loss, respectively.

To establish his claim for lost future earnings or earning capacity, Mr. Litzenberg relied upon the testimony of Walter Stoeppelworth, an expert in the fields of remodeling, construction renovation, and estimations, to determine the cost of hiring a replacement. Mr. Stoeppelworth testified to how he arrived at his conclusion concerning the cost appellee would incur by hiring contractors to perform the work that plaintiff had been able to perform himself. He testified that:

---

3. Appellee concedes that his future economic loss claim is based solely on the earnings he would have derived from his renovation business.

4. At the time of trial, Mr. Litzenberg's 1995 tax returns had not yet been prepared.

I asked ... Mr. Litzenberg to give me the specifications on what type of work he performed on each one of the properties. I then took that [and] the quantities of each particular item. I took that and used our estimating system[5] and went through and determined what the materials, labor and total cost would be. And then I applied the normal fifty percent mark up over cost for remodeling contractors to come up with what each different vocation would have cost had he hired it out to another contractor.

Rick Gaskins, an expert in forensic economics and accounting, also testified on appellee's behalf. Based on Mr. Stoeppelworth's analysis, Mr. Gaskins concluded that the average value of the work appellee performed on his properties from 1989 to 1992 inclusive was $12,429.00 per year. Mr. Gaskins took that amount and increased it by the historical average for inflation and productivity increases from the time of the accident until the end of Mr. Litzenberg's expected work life. He then reduced that figure to present value to arrive at the amount of appellee's loss.

At the head of Bramble's attack lies the contention that Mr. Stoeppelworth's and Mr. Gaskins's testimony were irrelevant because appellee's renovation and rental business had not shown a history of earnings. Bramble advances the following additional appellate contentions to overturn appellee's impairment of earnings award:

1) Appellee's evidence concerning the cost necessary to hire a replacement contractor was inappropriate. Instead, Bramble asserts that appellee should have introduced evidence demonstrating what a part-time contractor could earn. Bramble contends a better measure of damage would have been evidence of what Mr. Litzenberg could have made performing hourly services on a part-time basis.

2) Appellee failed to establish with reasonable certainty the expected profits from his business.

---

5. Mr. Stoeppelworth testified that the was the publisher of HomeTech Information Systems, the largest publisher of estimating manuals and management books for the remodeling industry in the country.

3) Appellee's evidence of increased additional expenses was not relevant because it was not translated by some other witness into a diminution in profits.

As part of our analysis of this appeal, we found it instructive to consider not only what Bramble contended at trial but also what it failed to assert. Turning to the latter three arguments, we conclude that none are properly before this Court because they were not first raised with the trial judge. The only objection to the testimony of Mr. Stoeppelworth that Bramble cites in their brief is the following exchange.[6]

[BRAMBLE'S COUNSEL]: Objection.

THE COURT: What's the basis?

[BRAMBLE'S COUNSEL]: Relevance, Your Honor. There is no lost wage claim or can be, I don't think a reasonable lost wage claim in connection with the rental property business which he owned.

THE COURT: Was that plead?

[BRAMBLE'S COUNSEL]: No sir, he never made any money at it. And this is an estimate of the cost of work that he did before the accident.

THE COURT: Well, that can go either way.... Your only objection is because his income taxes I guess show no profit.

[BRAMBLE'S COUNSEL]: Two objections. That one and also the fact that these are estimates of the value of work that he did on those properties in the past. He has already done them, wasn't prevented from doing them. He did it, so what's the relevance.

THE COURT: I take it they are going to use that as a yardstick.

[APPELLEE'S COUNSEL]: That is correct, Your Honor.

---

6. The only objection Bramble lodged against the testimony of Mr. Gaskins was to the relevancy of the present value schedules introduced into evidence. This contention was not pursued on appeal and, therefore, is deemed waived.

THE COURT: Yes. Overruled. It's in for what it's worth.[7]

■■■■ Ordinarily, our review of points or arguments that the parties fail to raise with the trial court is discretionary. Md. Rule 8–131(a). *See, e.g., State v. Bell,* 334 Md. 178, 188–91, 638 A.2d 107, 113–114 (1994); *Harmony v. State,* 88 Md.App. 306, 316–17, 594 A.2d 1182 (1991). This rule applies with equal force when a party seeks to appeal a trial judge's decision concerning the admissibility of evidence at trial. Unless a party properly raises an objection with the trial court, any error is deemed waived and ordinarily will not be considered on appeal. *E.g., Kovacs v. Kovacs,* 98 Md.App. 289, 306–07, 633 A.2d 425, 433–34 (1993), *cert. denied,* 334 Md. 211, 638 A.2d 753 (1994). *See United States v. Mezzanatto,* 513 U.S. 196, 203, 115 S.Ct. 797, 802, 130 L.Ed.2d 697 (1995) ("During the course of trial, parties frequently decide to waive evidentiary objections, and such tactics are routinely honored by trial judges"). Moreover, each party must separately object to a particular error to preserve his or her individual appellate contentions. *Graham v. State,* 325 Md. 398, 410–11, 601 A.2d 131, 137 (1992); *Fireman's Fund Ins. Co. v. Bragg,* 76 Md. App. 709, 719–20, 548 A.2d 151, 156 (1988).[8] The underlying rationale of this sometimes harsh rule is to promote the interests of fairness and judicial economy. *See, e.g., Zellinger v. CRC Dev. Corp.,* 281 Md. 614, 620, 380 A.2d 1064, 1067–68 (1977) (stating that rule serves to "prevent the trial of cases in a piecemeal fashion, thereby saving time and expense and accelerating the termination of litigation"); *Brice v. State,* 254 Md. 655, 661, 255 A.2d 28, 31 (1969) (rule "adopted to ensure fairness for all parties in a case and to promote the orderly administration of the law"); *Medley v. State,* 52 Md.App. 225,

---

7. Apparently it is worth $213,000.

8. There is no indication that Cramaro's counsel objected to the testimony of either Mr. Stoeppelworth or Mr. Gaskins. Accordingly, Cramaro does not benefit from whatever issues that Bramble has preserved by raising with the trial judge the aforementioned objection.

231, 448 A.2d 363, 366, *cert. denied,* 294 Md. 544 (1982).[9]

 A corollary to the aforementioned axiom addresses the specificity of objections raised at trial concerning the admission or exclusion of evidence. Generally, Maryland litigants are not required to state the specific ground for an objection unless requested to do so by the trial court. Md. Rules 2–517; 3–517; 4–323.[10] Consequently, if a court overrules an objection, all grounds for the objection may be raised on appeal. *E.g., Bailey v. State,* 263 Md. 424, 427, 283 A.2d 360, 361 (1971); *Blondes v. Hayes,* 29 Md.App. 663, 350 A.2d 163 (1976). On the other hand, counsel may state with particularity the grounds for an objection, either voluntarily or at the trial judge's request. If counsel provides the trial judge with specific grounds for an objection, the litigant may raise on appeal only those grounds actually presented to the trial judge. All other grounds for the objection, including those appearing for the first time in a party's appellate brief, are deemed waived. *See, e.g., United States Gypsum Co. v. Mayor and Council of Baltimore,* 336 Md. 145, 173–75, 647 A.2d 405, 419 (1994); *Klein v. Weiss,* 284 Md. 36, 55, 395 A.2d 126, 127 (1978) (specific ground volunteered); *Wilt v. Wilt,* 242 Md. 129, 133–34, 218 A.2d 180, 182–83 (1966) (general rule when specific ground requested by court); *Monk v. State,* 94 Md.App. 738, 746, 619 A.2d 166, 170 (1993); *Great Coastal*

---

9. "Lawyers do not commit error. Witnesses do not commit error. Jurors do not commit error. The fates do not commit error. Only the judge can commit error, either by failing to rule or by ruling erroneously when called upon, by counsel or occasionally by circumstances, to make a ruling." *DeLuca v. State,* 78 Md.App. 395, 397–98, 553 A.2d 730, 731–32, *cert. denied,* 316 Md. 549, 560 A.2d 1118 (1989) (Moylan, J.).

10. All three rules provide, in pertinent part:
 **(a) Objections to Evidence.**—... The grounds for the objection need not be stated unless the court, at the request of a party or on its own initiative, so directs....

 ❊ ❊ ❊ ❊ ❊ ❊

 **(c) Objections to Other Rulings or Orders.**—... The grounds for the objection need not be stated unless these rules expressly provide otherwise or the court so directs....

*Express Inc. v. Schruefer,* 34 Md.App., 706, 724, 369 A.2d 118, 128 (1977), *cert. denied,* 280 Md. 730, 371 A.2d 1104 (1977) (holding that because counsel volunteered specific objection, he cannot introduce new grounds on appeal).

Upon applying Maryland jurisprudence regarding preservation of objections for appellate review to the excerpted colloquy between the trial judge and Bramble's counsel, we conclude that Bramble presented the trial judge with only two grounds for excluding Mr. Stoeppelworth's testimony on relevancy grounds. First, the testimony should not have been admitted because appellee's business was not profitable. Second, it was inappropriate to use the value of work performed in the past to predict what the value of appellee's future services in his renovation-rental business would have been had he not been injured. In particular, Mr. Stoeppelworth's testimony was based on the assumption that appellee would continue to purchase residential buildings at the same rate as in the past and, therefore, have a continued call to use his various skills in the business. In our review, such an assumption, however, calls for speculation that transcends the bounds of reasonable certainty. Our reading of Bramble's brief failed to locate the later contention. Objections or arguments not raised in a brief are deemed waived. *See Monumental Life Ins. Co. v. United States Fidelity & Guar. Co.,* 94 Md.App. 505, 617 A.2d 1163, *cert. denied,* 330 Md. 319, 624 A.2d 491 (1993).

Furthermore, Bramble has not directed our attention to, nor has our own review of the record extract uncovered, an objection concerning whether appellee's evidence, if relevant, sufficiently established a claim for lost earning capacity. Thus, to the extent that Bramble's appellate contentions are appropriately couched as sufficiency of the evidence claims rather than relevancy claims, such arguments are not properly before this Court.[11] Thus, the sole line of attack presented by

---

11. A metaphor may better illuminate the distinction between contending evidence is irrelevant to prove a claim as opposed to asserting that

Bramble that we shall consider is whether the trial court properly admitted appellee's evidence of lost-earning capacity in light of the fact that appellee's renovation and rental business had not yet shown a profit.

■ We begin our analysis by noting that relevant evidence is evidence that tends to prove a proposition that is properly provable.

> Evidence to be admissible, must be both relevant and material. Evidence is material if it tends to establish a proposition that has legal significance to the litigation; it is relevant if its sufficiently probative of a proposition that, if established, would have legal significance to the litigation. Evidence is relevant, therefore, if it has any tendency to make the existence of a material fact more or less probable than it would be without the evidence, and a fact is material if it is of legal consequence to the determination of the issues in the case, which are dependent upon the pleadings and the substantive law.

*Kelly Catering v. Holman,* 96 Md.App. 256, 271, 624 A.2d 1300, *aff'd,* 334 Md. 480, 639 A.2d 701 (1994) (quoting *Myers v. Celotex Corp.,* 88 Md.App. 442, 454, 594 A.2d 1248 (1991), *cert. denied,* 325 Md. 249, 600 A.2d 418 (1992)).

■ Evidence is material if it establishes facts to which the applicable substantive law assigns legal consequences in the case. Stated differently, evidence is material when a link exists between the factual proposition that the evidence tends to prove and the substantive law. The substantive law sets the periphery of those facts that have legal consequences and

---

sufficient evidence was not adduced to prove such claim. Assume that the pieces of two jigsaw puzzles, one of a horse and the other of a ship, were inadvertently commingled. Assume further that we are concerned only with putting together the horse puzzle. By raising a relevancy contention, the objector is effectively claiming that the puzzle builder is using a piece from the ship puzzle to build the horse puzzle. The ship piece does not belong there. A sufficiency of the evidence contention, on the other hand, effectively states that, while the puzzle builder has used only horse pieces to assemble the horse puzzle, the picture is not yet complete.

are, therefore, material. This restriction fosters rational fact-finding, i.e., it prevents evidence that is not pertinent from being misused by the factfinder. G. Lilley, *An Introduction to the Law of Evidence* 23–24 (2d ed.1987). Evidence is, therefore, material "whenever it tends to establish the existence or nonexistence of an element (of a charge, claim, or defense) that is derived from the controlling substantive law." *Id.* at 25. Conversely, evidence is immaterial when it bears "no relationship to the legal issues raised by the substantive law made applicable by the pleadings . . . ." *Id.* n. 5.

We read Bramble's relevancy contention as postulating that, as a matter of law, appellee cannot recover for lost earning capacity because he had not shown that his business had demonstrated a history of profitability. To analyze properly Bramble's contention, we turn next to the substantive law underlying damages for lost earning capacity.

One injured by another's wrong is entitled to compensation for all pecuniary losses sustained. One component of pecuniary loss recoverable by an injured person amounts to any loss, impairment, or diminution of his earning capacity in consequence of his injury. *Monias v. Endal,* 330 Md. 274, 623 A.2d 656 (1993); *Delph v. Ammons,* 239 Md. 662, 212 A.2d 504 (1965). Essentially, an accident victim is entitled to be compensated to the extent his or her power to work in an activity that produces income has been reduced by the injury. There is no fixed rule by which the amount of damages for diminution or impairment of earning capacity may be definitively measured. Instead, all relevant facts on the issue must be considered. *Brooks v. Fairman,* 253 Md. 471, 252 A.2d 865 (1969).

Impairment of earning capacity is measured by the "lost *capacity* to earn, rather than what a plaintiff would have earned." *See* 4 F. Harper, F. James, O. Gray, *The Law of Torts,* § 25.8 at 546–47 (2d ed.1986), *quoted with approval in, Monias v. Endal,* 330 Md. 274, 281 n. 4, 623 A.2d 656 (1993). It is generally recognized that impairment of earning capacity seeks to compensate the plaintiff for a reduction in

his ability to earn through his personal services. *See, e.g., Fairbanks v. Nesbett,* 432 P.2d 607 (Alaska 1967); *Handelman v. Victor Equip. Co.,* 21 Cal.App.3d 902, 99 Cal.Rptr. 90 (1971); *Melford v. S.V. Rossi Constr. Co.,* 131 Vt. 219, 303 A.2d 146 (1973). Once the fact of impaired earning capacity is established, the plaintiff must submit evidence so that the extent of the impairment can reasonably be determined. The prevailing proper measure of lost earning capacity is the difference between the amount that the plaintiff was capable of earning before his injury and that which he is capable of earning thereafter.[12] Essentially, the plaintiff must establish the disparity between the market value of his services before and after the injury.

> The objective is to place [the victim] in the same economic position as would have been ... had the injury not occurred. We seek to accomplish this goal by a formula which ... consists of determining what [plaintiff's] annual earning power would have been but for the injury, deducting what it will be thereafter, multiplying the result by [plaintiff's] expectancy, and discounting the product to present value.

*Conte v. Flota Mercante Del Estado,* 277 F.2d 664 (2d Cir. 1960). *Accord Uryasz v. Archbishop Bergan Mercy Hosp.,* 230 Neb. 323, 431 N.W.2d 617 (1988). *See generally,* Restatement (Second) Torts §§ 906(b) & cmt. 6; 924(b) & cmt. d.

---

**12.** *See, e.g., Raney v. Honeywell,* 540 F.2d 932 (8th Cir.1976); *Aretz v. United States,* 456 F.Supp. 397 (S.D.Ga.1978), *aff'd,* 604 F.2d 417 (5th Cir.1979); *Griffith v. Wheeling–Pittsburgh Steel Corp.,* 452 F.Supp. 841 (W.D.Pa.1978); *Hildyard v. Western Fasteners, Inc.,* 33 Colo.App. 396, 522 P.2d 596 (1974); *Berndston v. Annino,* 177 Conn. 41, 411 A.2d 36 (1979); *Turner v. Chicago Transit Auth.,* 122 Ill.App.3d 419, 77 Ill.Dec. 928, 461 N.E.2d 551 (1984); *State v. Totty,* 423 N.E.2d 637 (Ind.App. 1981); *Holmquist v. Volkswagen of Am., Inc.,* 261 N.W.2d 516 (Iowa App.1977); *Cott v. Peppermint Twist Mgmt. Co.,* 253 Kan. 452, 856 P.2d 906 (1993); *Morgan v. Willis–Knighton Med. Ctr.,* 456 So.2d 650 (La. App.1984); *Anderson v. Burlington N. R. Co.,* 700 S.W.2d 469 (Mo.App. 1985), *cert. denied,* 476 U.S. 1116, 106 S.Ct. 1974, 90 L.Ed.2d 657 (1986); *Owens v. Kelly,* 240 N.C. 770, 84 S.E.2d 163 (1954); *Goodhart v. Pennsylvania R. Co.,* 177 Pa. 1, 35 A. 191 (1896); *Wilkins v. Royal Indem. Co.,* 592 S.W.2d 64 (Tex.Civ.App.1979); *Baldwin v. Gaines,* 92 Vt. 61, 102 A. 338 (1917); *Fischer v. Cleveland Punch & Shear Works Co.,* 91 Wis.2d 85, 280 N.W.2d 280 (1979).

■ Proof of impairment of earning capacity does not require the degree of specificity as does proof of loss of future wages. *See, e.g., Cates v. Brown,* 278 Ark. 242, 645 S.W.2d 658 (1983); *T.J. Allen Distrib. Co. v. Leatherwood,* 648 S.W.2d 773 (Tex.App.1983). As a general rule, any evidence is admissible that would assist the fact finder in determining the plaintiff's earning capacity before the injury and the potential decrease in that capacity after the injury, including rates and wages paid to those in the same vocation in which the plaintiff engages. *See, e.g., Turrietta v. Wyche,* 54 N.M. 5, 212 P.2d 1041 (1949).

■ Appellant contends that one cannot recover future profits from a business that has not demonstrated an ability to make consistent profits in the past. Bramble's reliance on the authority it cites in its brief is misplaced. Although profits are a separate item of damages in several causes of actions, including: (1) conversion or destruction of property used by a plaintiff for purposes of making a profit; (2) actions in which an individual's business has been harmed by a defendant's anti-competitive conduct; or (3) breach of contract, profits are not a separate item of damages in a personal injury case. *Shewry v. Heuer,* 255 Iowa 147, 121 N.W.2d 529, 535 (1963); *Greyhound Lines Inc. v. Duhon,* 434 S.W.2d 406, 415 (Tex.Civ. App.1968); *Featherly v. Continental Ins. Co.,* 73 Wis.2d 273, 243 N.W.2d 806, 811 (1976). *See generally,* Slagle, *The Role of Profits in Personal Injury Actions,* 19 Ohio St. L.J. 179, 180 (1958) Instead, when an accident victim is in business for himself, loss of profits is essentially an element of loss of earnings from personal services and, therefore, is used as an aid in calculating damages for impairment of earning capacity. *See, e.g., Mihalek v. Cichowski,* 4 Conn.App. 484, 495 A.2d 721, 722–23 (1985); *Hansen v. Standard Oil Co.,* 55 Idaho 483, 44 P.2d 709, 714 (1935); *Doran v. Culver,* 88 Or.App. 452, 745 P.2d 817, 820 (1987), *review denied,* 305 Or. 102, 750 P.2d 496 (1988); *Baxter v. Philadelphia & R.R. Co.,* 264 Pa. 467, 107 A. 881, 882–83 (1919). The reason behind this rule is that damages for lost profits are not necessarily the probable consequence of a personal injury. As is often the case,

portions of an entrepreneur's profits are derived from outside capital or other labor and are therefore not a reflection of the value of the services contributed by the entrepreneur. None of the cases upon which Bramble relies were personal injury suits. *Evergreen Amusement Corp. v. Milstead*, 206 Md. 610, 618, 112 A.2d 901 (1955) (addressing claim for lost profits suffered as a result in delay in completion of contract); *M & R Contractors & Builders, Inc. v. Michael*, 215 Md. 340, 138 A.2d 350 (1958) (damages arising out of alleged breach of building contract); *St. Paul at Chase Corp. v. Manufacturers Life Ins. Co.*, 262 Md. 192, 244–47, 278 A.2d 12, *cert. denied*, 404 U.S. 857, 92 S.Ct. 104, 30 L.Ed.2d 98 (1971) (breach of contract and tortious injury to business); *Reighard v. Downs*, 261 Md. 26, 34–37, 273 A.2d 109 (1971) (damages for lost profits suffered by developer due to surveyor's erroneous calculation of acreage).

Because impairment of earning capacity is not measured by what the claimant actually earned, it follows that a plaintiff can recover for impairment of earning capacity without establishing a prior track record of earnings. Indeed, there are a myriad of situations in which courts have permitted accident victims to recover for lost earning capacity although they were earning nothing at the time of the injury. *See, e.g., Bishop v. Poore*, 475 So.2d 486 (Ala.1985) (unemployed); *McCormack v. City and County of San Francisco*, 193 Cal.App.2d 96, 14 Cal.Rptr. 79 (1961) (widow); *Dowling v. Hebert*, 146 Conn. 516, 152 A.2d 642 (1959) (wife who worked for family business without pay); *Callaway v. Miller*, 118 Ga.App. 309, 163 S.E.2d 336 (1968) (school child); *Prince v. Lott*, 369 Mich. 606, 120 N.W.2d 780 (1963) (plaintiff serving sentence of imprisonment); *Lesniak v. County of Bergen*, 117 N.J. 12, 563 A.2d 795 (1989) (infant); *Kavanaugh v. Nussbaum*, 71 N.Y.2d 535, 528 N.Y.S.2d 8, 523 N.E.2d 284 (1988) (newborn); *Doremus v. Atlantic C. L. R. Co.*, 242 S.C. 123, 130 S.E.2d 370 (1963) (child); *McLaughlin v. Chicago, M. S.P. & P. R. Co.*, 31 Wis.2d 378, 143 N.W.2d 32 (1966) (priest who had taken vow of poverty); *Richmond v. Zimbrick Logging*, 124 Or.App. 631, 863 P.2d 520 (1993), *review denied*, 318 Or. 459,

871 P.2d 123 (1994) (unemployed). One reason for this rule is that a defendant is not entitled to a windfall merely because the plaintiff attached more value to his time for purposes other than earning money when the injury occurred.[13]

In applying the general rule that one can recover for impairment of earning capacity without actual earnings to the case of a self-employed plaintiff, we conclude that the fact that a business has not yet turned a profit does not automatically bar a self-employed plaintiff from recovering for lost earning capacity. It follows, therefore, that a self-employed accident victim is entitled to introduce evidence of his earning capacity in that business despite the fact that the business had not yet established a history of earnings. *See, e.g., Ford v. Board of County Comm'rs,* 677 P.2d 358, 360 (Colo.App.1983) (fact that business did not show distributed profit in its two years of operation before decedent's death did not require exclusion of evidence of impairment of decedent's earning capacity). Furthermore, an entrepreneurial plaintiff may recover for loss of earning capacity even though the books of the business indicate that it is operating at a loss. *Delott v. Roraback,* 179 Conn. 406, 426 A.2d 791, 794 (1980) (plaintiff entitled to compensation for earning impairment even though plaintiff's income tax returns showed loss for years in question); *Laing v. American Honda Motor Co.,* 628 So.2d 196, 204–05 (1993), *cert. denied,* 635 So.2d 239 (holding that plaintiff was entitled to recover for lost earning capacity although his tax returns reflected a loss for six consecutive years). Accordingly, we conclude that testimony concerning impairment of earnings is relevant, and therefore admissible, even

---

**13.** The same holds true in the context of injury to property. One is liable for destroying a piece of equipment, whether its owner intends to use it; a trespasser is liable for occupying the premises of another even if the true owner would not have used it. In other words, recovery for lost earning capacity can be conceived as representing the plaintiff's lost opportunity cost. *See* Note, *Tort Damages for the Injured Homemaker: Opportunity Cost or Replacement Cost?,* 50 Univ. Colo. L.Rev. 59 (1978).

though a self-employed plaintiff is not yet earning money in his or her business.

## III.

Regarding Cramaro's liability, we faithfully reproduce below the entire argument contained in Cramaro's brief:

Because the tarping system was destroyed after the accident, except for a small piece of cable assembly, it was impossible for Plaintiff's expert to determine why it broke and caused the accident.

Mr. [Thomas] Lacek's [appellee's expert] basis for opining that the Cramaro's design was defective was twofold. First, because the tarp hit an incoming vehicle then both cables had to have broken; and second, because the cables broke, they were not sufficiently strong.

Mr. Lacek admitted that either a cable broke first, or the tarp material broke first, which then set in motion a chain of events leading to the collision. Because the system was discarded, he could not determine what happened first.

Mr. Lacek testified that each steel cable in the tarp system was 46 feet in length. Obviously, either of the cables could have broken, for any reason and been blown by the high winds over to oncoming traffic. Once a cable hit an oncoming vehicle, then the force of the collision could have broken the other cable.

Additionally, Mr. Lacek never calculated the strength of the cables, as designed and supplied.

As a result, Mr. Lacek could only speculate that a design defect and improper maintenance combined to cause the subject collision. Because the lack of evidence required him to speculate, his testimony, should have been excluded as requested by Cramaro.

■ ■■ In transcribing this language into our opinion, we did not omit references to cited authority. Cramaro's briefing

of this contention is completely devoid of legal authority.[14] In *Oroian v. Allstate Ins. Co.*, 62 Md.App. 654, 490 A.2d 1321 (1985), appellants contested the admissibility of a computer printout, which was unsigned, unverified, and unauthenticated. We held that because appellants, in their brief, cited no authority for their position, their contention was deemed waived. *Id.* at 658, 490 A.2d 1321. It is not our function to seek out the law in support of a party's appellate contentions. *See von Lusch v. State*, 31 Md.App. 271, 282, 356 A.2d 277 (1976), *rev'd on other grounds*, 279 Md. 255, 368 A.2d 468 (1977). Accordingly, we shall not address the potential merits of Cramaro's appellate contention.

## *IV.*

▮▮▮ Appellant Cramaro asserts that because insufficient evidence was adduced at trial to support appellee's claim for lost future earnings, the circuit court should have granted its Motion for New Trial.

> Ordinarily, a trial court's order denying a motion for a new trial will be reviewed on appeal if it is claimed that the trial court abused its discretion. However, an appellate court does not generally disturb the exercise of a trial court's discretion in denying a motion for a new trial.

*Buck v. Cam's Broadloom Rugs*, 328 Md. 51, 57, 612 A.2d 1294 (1992) (quoting *Mack v. State*, 300 Md. 583, 600, 479 A.2d 1344 (1984)). Therefore, our review is governed by an abuse of discretion standard. *Id.*

▮▮▮ In reviewing appellants' record extract of this case, we discovered that the first time Cramaro contended

---

14. Cramaro's counsel did furnish the Court with a table of citations in the front of his brief, which we have copied here verbatim.

**TABLE OF CITATIONS**

*A.S. Abell v. Skeen*, 265 Md. 53, 288 A.2d 596 (1972)
*Conklin v. Schillinger*, 255 Md. 50, 257 A.2d 187, (1969)
*Kujawa v. Baltimore Transit Co.*, 224 Md. 195, 167 A.2d 96, 1961

Cramaro's counsel, however, fails to articulate the proposition he believes these cases stand for or where in his arguments these authorities should be inserted.

that appellee had not adduced sufficient evidence to prove his claim for loss of earning capacity was in its post-trial motion. A trial court may grant a new trial on the basis of an issue that could have been, but was not, raised at trial. *Cam's Broadloom Rugs, Inc. v. Buck,* 87 Md.App. 561, 590 A.2d 1060 (1991), *vacated on other grounds,* 328 Md. 51, 57, 612 A.2d 1294 (1992). When a trial court denies such a motion, however, the Court of Appeals has indicated that the movant is precluded from raising those substantive issues on appeal. *Buck,* 328 Md. at 61, 612 A.2d 1294.

> The defendant is correct in arguing that ordinarily a party will not be permitted to raise on appeal an error to which he has not interposed a seasonable objection at trial. Accordingly, if [the trial judge] had denied [the motion for new trial] in this case, Buck would not have been permitted to argue those matters on appeal.

Accordingly, we conclude that the trial judge did not abuse his discretion in denying Cramaro's motion for mistrial and shall not review on the merits Cramaro's contention that insufficient evidence was adduced to support appellee's impairment of earnings award. Furthermore, as we noted, *supra,* with regard to the briefing of Cramaro's first appellate contention, Cramaro has failed to furnish this Court with any authority supporting its position. Mindful of our discussion in Part III, *supra,* we deem this contention waived as well.

JUDGMENT OF THE CIRCUIT COURT FOR CECIL COUNTY AFFIRMED; COSTS TO BE DIVIDED EVENLY BETWEEN APPELLANTS BRAMBLE AND CRAMARO.